THE NORTHERN TRUST COMPANY, Plaintiff-Appellee, v. ROY
BURLEW, Defendant-Appellant.

First District (5th Division)   No. 86—1390

Opinion filed June 17, 1988.—Rehearing denied July 25, 1988.

William J. Harte, Ltd., of Chicago (William J. Harte and Sylvia A. Sotiras, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago (Malcolm S. Kamin and Thomas Flannigan, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

This is an appeal from orders of the circuit court of Cook County granting the motion for summary judgment brought by plaintiff, The Northern Trust Company (Northern), dismissing the counterclaim of defendant Roy Burlew and awarding plaintiff attorney fees, costs, and interest.

We affirm.

Plaintiff sold collateral pledged by defendant to satisfy indebtedness on two notes and then brought this action to recover the remaining deficiency. Defendant counterclaimed for damages resulting from the sale of his collateral. On appeal defendant contends summary judgment should not have been granted because: (1) a question of fact remained as to whether a constructive trust was imposed on the collateral, imposing on plaintiff a duty to preserve those assets; (2) a question of fact remained as to the commercial reasonableness of the sale; (3) plaintiff was estopped from denying that notice to the defendant of the sale of the collateral was required; and (4) defendant's authorization of a future sale of the collateral was obtained by economic duress.

The following facts are undisputed. On November 24, 1981, defendant Burlew executed a promissory note for $175,000 to the order of plaintiff bank. Burlew offered as collateral 5,800 shares of the common stock of Houston Natural Gas and 500 shares of Mobil Corporation. On December 14, 1981, Burlew executed a second note for

$325,000, offering 10,900 more shares of Houston Natural Gas as collateral.

Both notes gave the holder the option of making them immediately due and payable without demand if the maker, Burlew, failed to pay, when due, any amount payable on any of the obligations. In the event of a default Northern was given the right to set off Burlew's collateral by selling or otherwise disposing of it. It was also provided that upon a default Burlew agreed to pay on demand to Northern all expenses for enforcement of rights relating to the collateral, including reasonable attorney fees and legal expenses.

On March 30, 1982, Burlew failed to pay the first quarterly interest payment due on both notes. By April 30, 1982, the value of the pledged stock had declined to such an extent that the loans were short-margined by over $50,000. On several occasions after April 30 Dennis Biggerstaff, the Northern officer principally responsible for those loans, spoke to defendant about the past-due interest and the insufficiency of the collateral. Biggerstaff told defendant that the collateral would have to be sold unless the insufficiency was reduced. Defendant repeatedly promised to put up additional collateral or otherwise make interest payments.

The value of the Houston Natural Gas stock continued to fall and by June 25, 1982, the collateral was insufficient by over $100,000. Biggerstaff again advised defendant that the collateral would be sold. Between August 5 and August 10, 1982, defendant pledged as collateral an additional 1,921 shares of the common stock of Houston Natural Gas and 724 shares of the common stock of Natomas Corporation.

On August 10, 1982, an associate of Biggerstaff, H. David McMahon, delivered to defendant a letter informing him that the additional collateral would suffice as long as its market value remained "stable." However, the letter also stated: "If the market price of the collateral of Houston Natural Gas drops in value an amount of less than $27.00 per share, the Bank must sell all collateralized stock to pay the principle and interest due on your loan." Defendant signed an acknowledgement form on the letter which stated: "Acknowledged this date."

By August 13 the stock of Houston Natural Gas had closed at $24⁷/₈ per share and defendant's indebtedness was short-margined by over $160,000. A letter from Northern dated that same day, but mailed August 16, informed defendant that on August 17, 1982, Northern would begin selling his stock. However, defendant did not receive the letter until after the same was completed on August 17. Repeated telephone calls by defendant to Biggerstaff on August 16

were not returned.

When the collateral was sold on August 17, the proceeds were insufficient to offset all of defendant's debt to the Bank. This action then ensued.

OPINION

■■ In this court Northern has moved to dismiss the appeal for lack of jurisdiction, asserting that defendant's notice of appeal was filed more than 30 days after the entry of the judgment appealed from. We find no merit to this contention. Summary judgment for the bank was granted on April 4, 1984, and defendant's counterclaim was dismissed September 24, 1984. The bank's petition for attorney fees was granted September 9, 1985. On September 26, 1985, defendant filed a "Motion to Reconsider and to Vacate Orders entered August 16, 1984, September 24, 1984, and September 9, 1985." The motion was denied May 6, 1986, and the notice of appeal was filed on May 20, 1986.

As Northern concedes in its motion to dismiss the appeal, if this motion was directed to the September 9, 1985, order, then the subsequent notice of appeal, filed within 30 days of the denial of the motion to reconsider, was timely. Northern contends that the motion does not actually attack the award of attorney fees. But those fees could only be awarded if the prior rulings were upheld. Thus, in attacking those prior rulings, the motion clearly also attacked the validity of the order for fees. Accordingly, we find that the appeal is properly before us.

Northern also asserts that three of the defendant's contentions on appeal should be deemed waived because they were first raised before in defendant's motion for reconsideration. However, the trial court's order indicates that the court did consider the issues in Northern never objected to such consideration. Accordingly, we will consider all of defendant's contentions on their merits.

I

■■ We find no merit to defendant's contention that summary judgment was inappropriate because a question of fact remained as to whether a constructive trust was imposed on the collateral. We find nothing in the record to suggest that the relationship of Northern to defendant was anything other than an ordinary debtor-creditor relationship. To establish the existence of a fiduciary relationship a party must have shown that one person placed trust and confidence in another who thereby obtained influence or superiority over that person. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) To find such a

relationship in the relationship of the parties to this action would mean any debtor-creditor relationship would give rise to fiduciary obligations.

## II

■ We also find no merit to defendant's contention that the sale was not commercially reasonable under the Uniform Commercial Code or that additional notice to him was required. Section 9—207(1) of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 9—207(1)) provides:

> "A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed."

As we held in *Capos v. Mid-America National Bank* (7th Cir. 1978), 581 F.2d 676, this section does not impose upon a bank the duty to preserve the market value of stock collateral. This disposes of defendant's contention that prior to the sale Northern should have undertaken to determine whether the value of his stock would increase in the future.

The Code also disposes of defendant's contention that insufficient notice of the sale was given to him. Section 9—504(3) of the Code (Ill. Rev. Stat. 1987, ch. 26, par. 9—504(3)) provides in pertinent part:

> "Unless collateral is *** of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale *** shall be sent by the secured party to the debtor ***."

Clearly no notice was required in this case, although Northern did in fact inform defendant that the sale would take place if the collateral declined further in value.

## III

■ Because of this latter notification, it is also clear that defendant's claim of estoppel is unavailing. Defendant contends that because it previously allowed him to tender stock instead of interest payments, Northern should be estopped from asserting that notice of the sale was not required. The notification letter from Northern, received by defendant on August 10, 1982, informed defendant that acceptance of the additional stock did not mean that Northern was waiving its right to sell the collateral. Thus defendant could not have been lulled into thinking that no sale would take place.

## IV

■ Finally defendant contends that his authorization of a future sale of the collateral, as represented by his signing of the August 10, 1982, letter, was obtained by economic duress. This contention is totally without merit. Under the authority cited by defendant, such duress is accomplished by a wrongful act or threat which induces another party to enter into a contract. (*Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 182 N.E.2d 706.) The undisputed record before us establishes that Northern acted in a lawful and patient fashion in ultimately concluding that it should exercise its right to dispose of the collateral.

For the reasons set forth in the opinion the judgment of the circuit court is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.