*In re* RALPH NAU, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Ralph Nau, Respondent-Appellant).

Second District   Nos. 2—90—0093, 2—90—0682 cons.

Opinion filed February 22, 1991.—Rehearing denied April 5, 1991.

William E. Coffin, of Guardianship & Advocacy Commission, of Elgin, and Sandra Kopels, of Legal Advocacy Service, of Chicago, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Respondent Ralph Nau (respondent) appeals from two orders of the circuit court of Kane County. The court first ordered respondent to be committed to the Department of Mental Health Facility in Elgin on an involuntary basis. In the consolidated case, the trial court ordered respondent's continued commitment to the Elgin facility. We reverse these orders.

Extensive background to these cases is contained in *People v. Nau* (1988), 167 Ill. App. 3d 338. We will provide only those facts necessary to decide these cases.

In August 1984, respondent was charged with the murder of his stepbrother, Dennis Gerken. Respondent was acquitted in May 1989,

and the State immediately filed a petition to involuntarily admit him to the mental health facility on an emergency basis. Following a stipulated bench trial on December 11, 1989, respondent was found to be a person subject to involuntary admission and was committed to the Elgin facility.

Respondent first contends that the petition was not executed in accordance with statutory requirements. Respondent was originally admitted to the facility pursuant to article VI of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 3—600 *et seq.*). Section 3—602 of the Code requires, in addition to the petition for involuntary admission, "a certificate executed by a physician, qualified examiner, or clinical psychologist which states [among other things] that the respondent is subject to involuntary admission and requires immediate hospitalization." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—602.) Another such certificate must be filed within 24 hours. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—610.) Respondent argues that the certificate which accompanied the petition does not establish that the preparer was a physician, qualified examiner, or clinical psychologist. The certificate is signed, somewhat illegibly, but is dated where the preparer's title should have been included. Respondent contends that the lack of the preparer's title constitutes failure to comply with the Code and requires reversal of the trial court's order. We disagree.

■ Noncompliance with statutory involuntary commitment procedures renders the judgment in such a cause erroneous and of no effect. (*In re King* (1986), 148 Ill. App. 3d 741, 745.) However, the Code does not require that an examiner's title appear on the face of the certificate; therefore, noncompliance with the Code cannot be premised on this absence. In addition, respondent at no time below challenged the credentials of the signatory to the initial certificate filed, and the record does not contain any evidence that the signatory was unqualified to sign the certificate. In the absence of any such evidence, we must presume that the certificate was properly executed. See *In re Grimes* (1990), 193 Ill. App. 3d 119, 122-23.

Respondent next contends that the court's order must be reversed because, contrary to the Code, he was not properly served with notice of the hearing. Section 3—611 of the Code states in part:

"Upon the filing of the petition and *** certificate, the court shall set a hearing to be held within 5 days *** after receipt of the petition. The court shall direct that notice of the time and place of the hearing be served upon the respondent." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—611.)

In this case, the petition and certificate were filed between 2:03 and 2:04 p.m. on June 1, 1989. The notice of hearing, which states that respondent was served with notice on June 1, was filed at 2:05 p.m. on the same date. Respondent argues that these facts demonstrate that he had been served with notice before the petition and certificate were filed and before the court set the hearing date, in violation of section 3—611 of the Code. We agree.

■ This court has consistently held that the State must strictly comply with relevant provisions of the Code. (See *In re Hatala* (1990), 200 Ill. App. 3d 163; *In re Splett* (1990), 194 Ill. App. 3d 391; *In re Bloyer* (1989), 185 Ill. App. 3d 245.) Noncompliance with procedures prescribed in the Code renders the judgment erroneous and of no effect. (*Hatala*, 200 Ill. App. 3d at 165.) We see no reason to depart from this consistent path. In this case, the hearing date was set, and the respondent was served with notice of hearing, before the petition and certificate were even filed with the court. This failure to follow the provisions of section 3—611 requires reversal of the circuit court's order.

■ We determine that we must also reverse the trial court's judgment in the consolidated case ordering respondent's continued commitment to the Elgin facility. Section 3—813 of the Code provides in part:

"An initial order for hospitalization or alternative treatment shall be for a period not to exceed 60 days. Prior to the expiration of the initial order if the facility director believes that the patient continues to be subject to involuntary admission, a new petition and 2 new certificates may be filed with the court. \*\*\* If no petition is filed prior to the expiration of the initial order, the patient shall be discharged." (Ill. Rev. Stat. 1989, ch. 91½, par. 3—813.)

In the case before us, the initial order for respondent's involuntary hospitalization was entered on December 11, 1989. The petition for continued hospitalization was not filed until February 9, 1990, 61 days after the court's initial order. This court, requiring strict compliance with required statutory procedures, has held that failure to timely file a petition to continue hospitalization requires reversal of the trial court's order and discharge of the respondent. (See *In re Walker* (1990), 200 Ill. App. 3d 159; *Hatala*, 200 Ill. App. 3d 163.) We, therefore, also reverse the trial court's order of continued hospitalization.

Although we reverse the trial court's orders because of statutory violations by the State, we will still consider two issues raised by respondent, as these issues may arise again in subsequent proceedings.

Respondent contends that his right to due process was violated when statements he made during an in-custody police interrogation were admitted against him at both of his commitment hearings. Respondent was questioned after the disappearance of his stepbrother and eventually told the police that his stepbrother had turned into an animal and that respondent then hit the animal several times with an axe and buried the body. This statement was suppressed in respondent's trial for murder, and the suppression was upheld by this court. (See *Nau*, 167 Ill. App. 3d 338.) Respondent filed motions *in limine* before both commitment hearings seeking to exclude his statements to the police. Both motions were denied. Respondent now argues that the trial court was required to hold a hearing to determine whether respondent's statements were knowingly and voluntarily made; if they were not, according to respondent, they should have been excluded.

■ Respondent acknowledges that proceedings under the Code are civil, not criminal, in nature. Having said that, respondent has failed to cite any authority that extends due process protection against use of involuntary or unknowing statements to civil proceedings in general or to involuntary commitment proceedings in particular. Respondent cites *People v. Capoldi* (1957), 10 Ill. 2d 261, for the proposition that due process requires a hearing on voluntariness before a statement can be used against a person in a civil proceeding. We find *Capoldi* distinguishable. *Capoldi* involved a hearing under the Sexually Dangerous Persons Act (the Act) (Ill. Rev. Stat. 1955, ch. 38, pars. 820.01 through 825e (now Ill. Rev. Stat. 1989, ch. 38, par. 105—1.01 *et seq.*)). Petitions for involuntary committal under that Act are to be filed "[w]hen any person is charged with a criminal offense and it shall appear *** to the State's Attorney of the county wherein such person is so charged, that such person is a sexually dangerous person." (Ill. Rev. Stat. 1989, ch. 38, par. 105—3.) Although it, too, is a civil proceeding, proof that a person is sexually dangerous must be beyond a reasonable doubt (*People v. Pembrock* (1976), 62 Ill. 2d 317, 321; Ill. Rev. Stat. 1989, ch. 38, par. 105—3.01); the standard in proceedings held pursuant to the Mental Health Act is clear and convincing evidence. (Ill. Rev. Stat. 1989, ch. 91½, par. 3—808.) Persons found to be sexually dangerous are committed to the custody of the Director of Corrections as guardian. (Ill. Rev. Stat. 1989, ch. 38, par. 105—8.) Persons involuntarily committed under the Mental Health Code may be committed to a mental health facility, private hospital, United States Veterans Administration facility, or the care and custody of a relative or other person willing and able to properly care for him. Ill. Rev. Stat. 1989, ch. 91½, par. 3—811.

■ The distinctions between criminal and sexually dangerous person proceedings, on the one hand, and involuntary civil commitments on the other are substantial. (*In re Stephenson* (1977), 67 Ill. 2d 544, 561.) Our supreme court has held:

"A 'sexually dangerous person' creates different societal problems, and his past conduct is different in degree and kind from the conduct of persons in the larger, more inclusive class defined under the Mental Health Code. The defendant has failed to show why, in light of these factors, the legislature is not justified in prescribing a different manner of treatment. As noted earlier, 'society has a substantial interest in the protection of its members from dangerous deviant sexual behavior.' " (*Pembrock*, 62 Ill. 2d at 322, quoting *United States ex rel. Stachulak v. Caughlin* (7th Cir. 1975), 520 F.2d 931, 937.)

Proceedings under the Sexually Dangerous Persons Act are much more closely tied to criminal actions and proceedings than are those under the Mental Health Code. Strict procedural safeguards are required for proceedings under the Act; however, even then, not all criminal procedural safeguards need be applied. (*People v. Allen* (1985), 107 Ill. 2d 91, 100, *aff'd* (1986), 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988.) Although a loss of liberty is inherent in both criminal and involuntary commitment proceedings, the "use of simplistic analogies is of little real assistance." (*Stephenson*, 67 Ill. 2d at 554.) We conclude that proceedings under the Mental Health Code are sufficiently different from criminal proceedings and those under the Sexually Dangerous Persons Act so as to distinguish and make inappropriate the adoption of the *Capoldi* requirement of a hearing for voluntariness. Therefore, the trial court did not err in admitting respondent's statements.

Respondent next contends that the trial court erred in admitting evidence of Dennis Gerken's murder in the hearing to continue respondent's hospitalization. According to respondent, his acquittal on the murder charge collaterally estopped the State from arguing that respondent was responsible for the murder. We disagree.

Respondent was acquitted of Gerken's murder at a discharge hearing held pursuant to section 104—25 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 104—25). If the evidence at such a hearing does not prove a defendant guilty beyond a reasonable doubt, the court shall acquit the defendant; however, the State may then proceed to involuntarily commit the defendant under the provisions of the Mental Health Code. (Ill. Rev. Stat. 1989, ch. 38, par. 104—25(b).) The State would be required to prove that the

defendant was a person subject to involuntary admission by proving that the defendant was mentally ill and that either he is reasonably expected to seriously harm himself or another in the near future or that he is unable to provide for his basic physical needs so as to guard himself from serious harm. Ill. Rev. Stat. 1989, ch. 91½, par. 1—119.

The trial court suppressed defendant's statement and then found "that Ralph Nau probably committed this offense based only upon the evidence presented." However, the court was not convinced beyond a reasonable doubt and, therefore, acquitted respondent of his stepbrother's murder. Respondent now argues that the State attempted to "relitigate" the murder charge in the continued commitment hearing by referring to respondent as a "murderer" in opening and closing statements and by presenting the testimony of a police officer as to his theory of how respondent committed the murder. The admission of this evidence and argument, according to respondent, was reversible error and warrants a new hearing.

■■ ■ The doctrine of collateral estoppel was designed to protect parties from having to relitigate identical causes of action with the same party or privy. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432.) This doctrine may be invoked if (1) the issue decided in the prior adjudication is identical with the one presented in the current suit; (2) the prior suit was terminated with a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior suit. (*Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7.) Clearly, this doctrine is not applicable in the case before us. In the discharge hearing, respondent was acquitted of murder and should not have been termed a "murderer." However, the question in the case before us is not whether respondent murdered Dennis Gerken, but whether respondent is a person subject to continued involuntary admission. The court need not find that respondent murdered Gerken in order to find respondent subject to involuntary admission. It is on this basis that we distinguish *People v. Grayson* (1974), 58 Ill. 2d 260, a case relied upon heavily by respondent. In *Grayson*, the defendant, already on probation, was charged with armed robbery. Following the defendant's acquittal on that charge, the State attempted to revoke the defendant's probation based upon his participation in the robbery. The trial court revoked the probation; our supreme court reversed the revocation. The court there held that the State could not attempt to relitigate the defendant's participation in the robbery, as that issue had already been decided in the prior proceeding. (*Grayson*, 58 Ill. 2d at 265.) Both the criminal trial and the revocation hearing sought to

resolve identical issues of whether the defendant committed the armed robbery. In the case before us, the ultimate question to be resolved is not the same as that resolved in the prior proceeding. Respondent's suitability for continued involuntary admission was not at issue in the discharge hearing. Therefore, the State was not estopped from seeking the admission of this evidence.

Because of our disposition of prior issues, we need not address respondent's remaining contention.

The judgment of the circuit court of Kane County is reversed.

Reversed.

BOWMAN and GEIGER, JJ., concur.