576 N.E.2d 955 (1991)
216 Ill. App.3d 204
160 Ill.Dec. 1
Kathy FRANKEL, Plaintiff-Appellant,
v.
OTISWEAR, INC., an Illinois corporation and Skokie Federal Savings and Loan Association, Defendants-Appellees.
No. 1-89-3534.
Appellate Court of Illinois, First District, Fourth Division.
June 27, 1991.
Rehearing Denied August 5, 1991.
*956 Murphy & Boyle Chartered (Robert D. Boyle and Morgan F. Murphy III, of counsel), and Mark R. Valley, Chicago (Mark R. Valley, of counsel), for plaintiff-appellant.
Wm. Carlisle Herbert, E. Glenn Rippie, Karen A. Dort, Hopkins & Sutter, Chicago, for defendant-appellee Resolution Trust Corp., having been substituted for Skokie Federal Sav. and Loan Ass'n.
Justice JOHNSON delivered the opinion of the court:
Plaintiff, Kathy Frankel, appeals the order of the circuit court of Cook County denying her motion for a rehearing pursuant to section 2-1203 of the Code of Civil Procedure (the Code) (Ill.Rev.Stat.1987, ch. 110, par. 2-1203), and her alternative request to file a fourth amended complaint against defendants, Otiswear, Inc. and Skokie Federal Savings and Loan Association. In addition, plaintiff challenges the trial court's dismissal of her third amended complaint pursuant to section 2-615 of the Code. Ill.Rev.Stat.1987, ch. 110, par. 2-615.
The following issues are before this court for review: (1) Whether this court has jurisdiction over this cause; (2) whether plaintiff's claims are barred by collateral estoppel; (3) whether the trial court erred when it dismissed count II of plaintiff's third amended complaint that prayed for the court to impose a constructive trust on the treasury note; (4) whether the trial court properly dismissed count XI of plaintiff's third amended complaint which was an action for replevin of the treasury note; (5) whether the trial court erred when it dismissed count XII of plaintiff's third amended complaint for negligence against Skokie Federal Savings and Loan Association; and (6) whether plaintiff has waived her right to assert allegations that Skokie Federal Savings and Loan Association violated suretyship laws, whether its security interest in the collateral was perfected, and whether renewals of the treasury note by it may be maintained pursuant to the hypothecation agreement.
We affirm.

BACKGROUND
On July 21, 1986, plaintiff executed a hypothecation agreement which assigned a treasury note to Otiswear, Inc. (Otiswear), in order to allow it to pledge the treasury note as collateral for loans. A hypothecation agreement is an agreement whereby one party pledges specific property as collateral or security for a debt. The lender is not given title to the pledged property; however, the lender may sell the pledged property upon the debtor's default. Black's Law Dictionary 669 (5th ed. 1979).
The hypothecation agreement states, in pertinent part:
"Gentlemen: * * * for the purpose of enabling said borrower [Otiswear] to obtain credit * * * I [Kathy Frankel] do hereby assign, release and transfer unto said borrower all of my right, title and interest in and to said property [the treasury note], and hereby expressly authorize said borrower to pledge or hypothecate all or any part of said property for the indebtedness aforesaid * * *.
Furthermore, I request that you give, or continue to give said borrower, credit in the form of loans or renewals, or extensions as aforesaid, and in consideration of all or any such credit so granted by you, I agree that all or any property pledged or hypothecated as aforesaid, shall be subject in your hands or those of your assignees * * *. The proceeds of all loans shall be accounted for and paid over to the borrower aforesaid, and said collateral securities may be disposed of and/or paid over, to or upon the direction of said borrower."
Contemporaneous with the signing of the hypothecation agreement, Otiswear signed a treasury note due on June 30,1987, in the *957 amount of $92,000, payable to the First National Bank of Morton Grove. Pursuant to the hypothecation agreement, plaintiff pledged the treasury note as collateral for a loan to Otiswear. Plaintiff was given stock in Otiswear by its owner, Steven Otis, in consideration for her execution of the hypothecation agreement.
Approximately 1 year after obtaining the loan from the First National Bank of Morton Grove, Otis asked Skokie Federal Savings and Loan Association (Skokie Federal) to refinance the debt of Otiswear. Unbeknownst to plaintiff, Otis used the hypothecation agreement to obtain a $150,000 line of credit from Skokie Federal. Otis agreed to maintain the treasury note as collateral for the loan. A majority of the proceeds of the loan from Skokie Federal were paid to the First National Bank of Morton Grove to close out its loan. Then, the First National Bank of Morton Grove transferred its interest in the treasury note to Skokie Federal. After the treasury note matured, Skokie Federal purchased a substitute treasury note from the proceeds of the treasury note identified in the hypothecation agreement.
Plaintiff was not informed of the aforementioned transactions involving Skokie Federal. Otis later defaulted on his commercial line of credit at Skokie Federal. After plaintiff's relationship with Steven Otis deteriorated, plaintiff filed suit against him, Otiswear, and Skokie Federal in an effort to recover the treasury note. However, Steven Otis is no longer a defendant in this action.
On March 9, 1988, plaintiff filed a complaint for a writ of mandamus, and a complaint for permanent and preliminary injunctive relief. The subject matter of the complaint was the treasury note owned by plaintiff.
On April 8,1988, plaintiff filed an amended complaint which included, inter alia, count I for the imposition of a constructive trust on the treasury note, count II for replevin of the treasury note against Skokie Federal, count IV for negligence, and count V against Skokie Federal for conversion. Skokie Federal filed an answer to the amended complaint and a counterclaim against Steven Otis. In paragraph 5 of Skokie Federal's counterclaim, it alleged that Otis represented that he was the sole owner of the treasury note free from any lien, security interest, encumbrance, or claim.
On June 24, 1988, the trial court granted defendants' motion to strike count I of the amended complaint and granted plaintiff 14 days to file an amended pleading. This order made no rulings on any other issues raised in defendants' motion.
On July 12, 1988, plaintiff filed a second amended complaint, to which Skokie Federal filed an answer. On March 27, 1989, the trial court dismissed plaintiff's second amended complaint.
On April 21, 1989, plaintiff filed a third amended complaint. Count II prayed for the imposition of a constructive trust on the treasury note, count XI was an action for replevin of the treasury note, and count XII was a complaint for negligence against Skokie Federal.
Skokie Federal then filed a motion to dismiss pursuant to section 2-615 of the Code. (Ill.Rev.Stat.1987, ch. 110, par. 2-615.) Skokie Federal based its motion to dismiss upon allegations that the third amended complaint failed to state causes of action, that the hypothecation agreement barred any claim for wrongful possession, and that it owed no duty to plaintiff. On September 27, 1987, the trial court dismissed plaintiff's third amended complaint with prejudice.
The trial court made the following ruling:
"It is not apparent from what has been pled[] * * * that this litany of grievances * * * amounts to a fraudulent scheme when the events are extracted from a relationship three years in duration.
* * * There is no allegation that the sole purpose of all of these events that are listed in this complaint were toward the purpose of manipulating the hypothecated agreement, and there is no suggestion that the sole purpose of the representations *958 were in aid of any illegal contract.
Additional doubt as to the existence of any scheme arises from the recent disclosure that the hypothecation agreement was executed in exchange for an agreement for stock in the company. Simply stated, the promise to pay back, the note being used as collateral, was a promise of future conduct, which cannot constitute a material misrepresentation in support of alleged fraud. The facts alleged here do not demonstrate any fraudulent scheme. * * * There is no constructive trust which can arise from this scattershot allegation because no fraud has been established. There is no constructive trust because the hypothecation agreement is clear and unambiguous on its face, and the Plaintiff cannot be given credit for not knowing what she clearly had known when she signed it.
For all of these reasons, Defendant's motion to strike and dismiss the complaint with prejudice is granted."
Plaintiff timely filed a motion for a rehearing pursuant to section 2-1203 of the Code (Ill.Rev.Stat.1987, ch. 110, par. 2-1203), which sought to vacate the trial court's dismissal order entered on September 27, 1989, or, alternatively, to grant plaintiff leave to file a fourth amended complaint on November 28, 1989. On November 28, 1989, the trial judge denied plaintiff's motion. A timely notice of appeal was filed on December 22, 1989.
On February 1, 1990, the Office of Thrift Supervision placed Skokie Federal into receivership and appointed the Resolution Trust Corporation (the RTC) its receiver. The RTC as Skokie Federal's receiver is now a proper defendant in this action.

OPINION

I
Defendants have correctly noted that plaintiff failed to include a statement of the jurisdictional basis for this appeal in her brief as required by Illinois Supreme Court Rule 341(e)(4)(i), which reads as follows:
"(e) The appellant's brief shall contain the following parts in the order named:
* * * * * *
(4) A statement of jurisdiction:
(i) In a case appealed * * * as a matter of right from the Appellate Court, a brief statement under the heading `Jurisdiction' of the jurisdictional grounds for the appeal * * *." (134 Ill.2d R. 341(e)(4)(i).)
See also Lindahl v. City of Des Plaines (1991), 210 Ill.App.3d 281, 288, 154 Ill.Dec. 857, 568 N.E.2d 1306.
Although plaintiff failed to submit a jurisdictional statement in compliance with Rule 341(e)(4), we find that this court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301. Rule 301 reads, in pertinent part, as follows:
"Every final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional." (134 Ill.2d R. 301.)
See also Lindahl, 210 Ill.App.3d at 288,154 Ill.Dec. 857, 568 N.E.2d 1306.
This court has jurisdiction over this appeal because a final judgment of dismissal was entered on counts II, XI, and XII of plaintiff's third amended complaint on September 27, 1989. On that same date, the trial court certified the judgment in favor of Skokie Federal as final. Therefore, this court has jurisdiction over this cause.

II
Defendants next maintain that the doctrine of collateral estoppel precludes plaintiff from pursuing this appeal. Defendants maintain that the collateral estoppel doctrine is applicable because the trial court determined on the merits that plaintiff had no cause of action against Mr. Otis for fraud, and because the trial court conclusively determined that Otiswear properly pledged the treasury note to Skokie Federal in accordance with the hypothecation agreement. Defendants rely upon Illinois State Chamber of Commerce v. Pollution Control Board (1979), 78 Ill.2d 1, 34 Ill. Dec. 334, 398 N.E.2d 9; Keim v. *959 Kalbfleisch (1978), 57 Ill.App.3d 621, 15 Ill.Dec. 219, 373 N.E.2d 565; Chidester v. Cagwin (1966), 76 Ill.App.2d 477, 222 N.E.2d 274, and Elston-Damen Currency Exchange, Inc. v. Sheon (1964), 46 Ill. App.2d 218, 197 N.E.2d 143.
Plaintiff contends that the doctrine of collateral estoppel is inapplicable. Plaintiff relies upon Service Systems Corp. v. Van Bortel (1988), 174 Ill.App.3d 412, 123 Ill. Dec. 833, 528 N.E.2d 378; In re Marriage of Firestone (1987), 158 Ill.App.3d 887, 110 Ill.Dec. 718, 511 N.E.2d 895, and Collins v. St. Jude Temple No. 1 (1987), 157 Ill. App.3d 708, 109 Ill.Dec. 911, 510 N.E.2d 979.
"Collateral estoppel precludes parties from relitigating an issue in a subsequent proceeding where that issue was actually or necessarily decided by a court of competent jurisdiction in an earlier proceeding involving the same parties in a different cause of action." (Emphasis retained.) Hammond v. North American Asbestos Corp. (1991), 207 Ill.App.3d 556, 562, 152 Ill.Dec. 425, 565 N.E.2d 1343; see also Collins, 157 Ill.App.3d at 710, 109 Ill.Dec. 911, 510 N.E.2d 979; Decatur Housing Authority v. Christy-Foltz, Inc. (1983), 117 Ill. App.3d 1077, 1082, 73 Ill.Dec. 519, 454 N.E.2d 379.
"`The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction.'" Stone v. Salvage & Bridges Agency, Inc. (1990), 206 Ill.App.3d 615, 619, 152 Ill.Dec. 76, 565 N.E.2d 318, quoting Housing Authority for La Salle County v. Young Men's Christian Association of Ottawa (1984), 101 Ill.2d 246, 252, 78 Ill.Dec. 125, 461 N.E.2d 959; see also Service Systems Corp. v. Van Bortel (1988), 174 Ill.App.3d 412, 418, 123 Ill.Dec. 833, 528 N.E.2d 378.
"The burden of establishing the defense of collateral estoppel is on the party invoking it." (Hammond v. North American Asbestos Corp. (1991), 207 Ill.App.3d 556, 562, 152 Ill.Dec. 425, 565 N.E.2d 1343.) The doctrine of collateral estoppel may be invoked under the following circumstances: "(1) [where] the issue decided in the prior adjudication is identical with the one presented in the current suit; (2) the prior suit was terminated with a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior suit." In re Nau (1991), 209 Ill.App.3d 805, 811, 154 Ill.Dec. 407, 568 N.E.2d 407; see also Illinois State Chamber of Commerce v. Pollution Control Board (1979), 78 Ill.2d 1, 7, 34 Ill.Dec. 334, 398 N.E.2d 9; Chidester v. Cagwin (1966), 76 Ill.App.2d 477, 486, 222 N.E.2d 274.
In the instant case, the doctrine of collateral estoppel is inapplicable. Defendants have failed to meet their burden of proof. (See Hammond, 207 Ill.App.3d at 562, 152 Ill.Dec. 425, 565 N.E.2d 1343.) Although the prior action was terminated on the merits, and the party against whom estoppel was asserted was a party in the previous suit, the issues decided in the prior adjudication are not identical to the ones presented in this appeal. (See In re Nau, 209 Ill.App.3d at 811, 154 Ill.Dec. 407, 568 N.E.2d 407.) The issues brought before the trial court were actions for the imposition of a constructive trust, replevin of the treasury note, and negligence by Skokie Federal. However, the issue on appeal is whether the trial court erred and abused its discretion by dismissing the aforementioned counts of plaintiff's third amended complaint pursuant to section 2-615 of the Code. (Ill.Rev.Stat.1987, ch. 110, par. 2-615.) Furthermore, this cause does not involve "two separate and consecutive cases arising on different causes of action * * *." (Emphasis retained.) Stone v. Salvage & Bridges Agency, Inc. (1990), 206 Ill.App.3d 615, 619, 152 Ill.Dec. 76, 565 N.E.2d 318.
In addition, we find defendants reliance upon Elston-Damen Currency Exchange, Inc. v. Sheon (1964), 46 Ill.App.2d 218, 197 N.E.2d 143, and Keim v. Kalbfleisch (1978), 57 Ill.App.3d 621, 15 Ill.Dec. 219, *960 373 N.E.2d 565, inappropriate. These cases are distinguishable from the case at bar because they both concern the doctrine of res judicata. Keim, 57 Ill.App.3d at 624, 15 Ill.Dec. 219, 373 N.E.2d 565; Elston-Damen Currency Exchange, Inc., 46 Ill.App.2d at 222, 197 N.E.2d 143.
The doctrine of res judicata is distinguishable from the doctrine of collateral estoppel. "The doctrine of res judicata provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent litigation between the same parties or their privies on matters found to be part of the same cause of action." (Bismarck Hotel Co. v. Sutherland (1988), 175 Ill.App.3d 739, 744, 125 Ill.Dec. 15, 529 N.E.2d 1091; see also In re Marriage of Firestone (1987), 158 Ill. App.3d 887, 891, 110 Ill.Dec. 718, 511 N.E.2d 895.) We find that res judicata and collateral estoppel are distinguishable because the collateral estoppel doctrine specifically prohibits the relitigation of certain issues (see Hammond v. North American Asbestos Corp. (1991), 207 Ill.App.3d 556, 562,152 Ill.Dec. 425, 565 N.E.2d 1343), while the doctrine of res judicata specifically prohibits the relitigation of certain rules of law. (See Bismark Hotel Co., 175 Ill.App.3d at 744, 125 Ill.Dec. 15, 529 N.E.2d 1091.) Furthermore, this court has also noted that the two doctrines differ because "[i]n res judicata, as distinguished from collateral estoppel, the cause of action must be the same in both suits." (Emphasis added.) Cohen v. Schlossberg (1958), 17 Ill.App.2d 320, 324, 150 N.E.2d 218.
In the instant case, the causes of action at trial are different from the causes of action presented on appeal. Accordingly, we find that the doctrine of collateral estoppel does not preclude this court from hearing this appeal.

III
We will now address the question of whether the trial court erred when it dismissed count II of plaintiff's third amended complaint which prayed for the court to impose a constructive trust upon the treasury note. Plaintiff argues that count II of her third amended complaint was properly pleaded and erroneously dismissed by the trial court because the record showed that Skokie Federal possessed constructive notice of Steven Otis' fraud, and that Skokie Federal was not a bona fide purchaser for value of the note. Plaintiff relies upon Oscar Gruss & Son v. First State Bank of Eldorado (7th Cir.1978), 582 F.2d 424, Compton v. Compton (1953), 414 Ill. 149, 111 N.E.2d 109; Roth v. Carlyle Real Estate Limited Partnership VII (1984), 129 Ill.App.3d 433, 84 Ill.Dec. 699, 472 N.E.2d 836, Sadacca v. Monhart (1984), 128 Ill. App.3d 250, 83 Ill.Dec. 463, 470 N.E.2d 589; City of Chicago v. Roppolo (1983), 113 Ill.App.3d 602, 69 Ill.Dec. 435, 447 N.E.2d 870; Selmaville Consolidated School District No. 10 v. Salem Elementary School District No. 111 (1981), 96 Ill.App.3d 1062, 52 Ill.Dec. 224, 421 N.E.2d 1087, and the Restatement of Restitution § 174, comment a, at 707-08 (1937).
Defendants maintain that the dismissal of count II should be affirmed because plaintiff did not allege a confidential relationship, because plaintiff did not allege that Skokie Federal committed fraud, because plaintiff did not allege facts showing that Mr. Otis or Otiswear committed fraud, because Skokie Federal was a bona fide purchaser for value of the treasury note, and because plaintiff's claim is barred by Federal law. Defendants rely upon D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp. (1942), 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, Federal Deposit Insurance Corp. v. Newhart (8th Cir.1989), 892 F.2d 47, Federal Deposit Insurance Corp. v. Langley (5th Cir.1986), 792 F.2d 541, Chatham Ventures, Inc. v. Federal Deposit Insurance Corp. (5th Cir.1981), 651 F.2d 355, Oscar Gruss & Son v. First State Bank of Eldorado (7th Cir.1978), 582 F.2d 424, Castleglen, Inc. v. Commonwealth Savings Association (D.Utah 1989), 728 F.Supp. 656, Federal Deposit Insurance Corp. v. Simon (N.D.Ill.1985), 607 F.Supp. 1254, Securities Exchange Comm'n v. Investors Security Leasing Corp. (W.D.Pa.1976), 415 F.Supp. 745, Sadacca v. Monhart (1984), 128 Ill.App.3d *961 250, 83 Ill.Dec. 463, 470 N.E.2d 589, Bank of Lincolnwood v. Comdisco (1982), 111 Ill.App.3d 822, 67 Ill.Dec. 421, 444 N.E.2d 657, Soules v. General Motors Corp. (1980), 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E.2d 599, Edwards v. Miller (1978), 61 Ill.App.3d 1023, 19 Ill.Dec. 82, 378 N.E.2d 583, Zickur v. Irminger (1974), 15 Ill. App.3d 805, 304 N.E.2d 635, and Compton v. Compton (1953), 414 Ill. 149, 111 N.E.2d 109. Defendants also rely upon section 2[13] of the Federal Deposit Insurance Corporation Act (12 U.S.C. § 1823 (1987)), the Restatement of Restitution § 172, comment c, at 708 (1937), and the Restatement of Restitution § 174, comment a, at 707-08 (1937).
"A constructive trust is a restitutionary remedy to restore to a plaintiff property of which he has been unjustly deprived and to take from the defendant property which, if retained, would unjustly enrich him. [Citations.] Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary or confidential relationship and a subsequent abuse of such relationship." (Edwards, 61 Ill.App.3d at 1026, 19 Ill.Dec. 82, 378 N.E.2d 583.) Plaintiff has correctly noted that some courts have imposed a constructive trust in absence of proof of fraud or the breach of a confidential relationship. (Roth v. Carlyle Real Estate Limited Partnership (1984), 129 Ill.App.3d 433, 438, 84 Ill.Dec. 699, 472 N.E.2d 836; City of Chicago v. Roppolo (1983), 113 Ill.App.3d 602, 609, 69 Ill.Dec. 435, 447 N.E.2d 870; Selmaville Community Consolidated School District No. 10 v. Salem Elementary School District No. 111 (1981), 96 Ill.App.3d 1062, 1066-67, 52 Ill.Dec. 224, 421 N.E.2d 1087.) However, our supreme court has mandated that "a constructive trust arises only when fraud is proved or when there is a fiduciary relationship in which the dominant party took advantage of the other." Compton, 414 Ill. at 157, 111 N.E.2d 109.
"Proof of a confidential or fiduciary relationship requires a showing that one party has placed his trust and confidence in another party who gains influence over him." (Northern Trust Co. v. Burlew (1988), 171 Ill.App.3d 1000, 1003, 121 Ill.Dec. 816, 525 N.E.2d 1123; Edwards, 61 Ill.App.3d at 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.) Proof of a fiduciary or confidential relationship is generally established by alleging facts which prove that the parties had an antecedent relationship which fostered the relationship. (Edwards, 61 Ill.App.3d at 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.) "[W]here [such a] relationship does not exist as a matter of law (e.g., attorney-client), it must be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust [citations]." Edwards, 61 Ill.App.3d at 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.
"Fraud must be pleaded with specificity, particularity and certainty and must apprise the opposite party of what he is called upon to answer [citations]." (Zickur v. Irminger (1973), 15 Ill.App.3d 805, 806-07, 304 N.E.2d 635.) Following are the elements of a cause of action for common law fraud: "(1) false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. [Citations.] Furthermore, the reliance by the other party must be justified * * *." Soules v. General Motors Corp. (1980), 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 402 N.E.2d 599; see also Zickur, 15 Ill.App.3d at 807, 304 N.E.2d 635.
"`[E]quity imposes a constructive trust upon the new form of species of property, not only while it is in the hands of the original wrong-doer, but as long as it can be followed and identified in whosesoever hands it may come, except those of a bona fide purchaser for value.'" (Sadacca v. Monhart (1984), 128 Ill.App.3d 250, 256, 83 Ill.Dec. 463, 470 N.E.2d 589, citing 4 J. Pomeroy, Equity Jurisprudence, § 1051, at 113 (5th ed. 1941).) A "[b]ona fide purchaser for value is one who, without notice of another's claim of right to, or equity in, property prior to his acquisition of title, has *962 paid vendor a valuable consideration." Black's Law Dictionary 161 (5th ed. 1979).
In the instant case, plaintiff does not allege any basis for a confidential or fiduciary relationship between herself and defendants. (See, Compton v. Compton (1953), 414 Ill. 149, 157, 111 N.E.2d 109; Edwards v. Miller (1978), 61 Ill.App.3d 1023, 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.) Nor did plaintiff produce proof which established the existence of a confidential or fiduciary relationship between herself and defendants. (See Edwards, 61 Ill.App.3d at 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.) In addition, plaintiff did not properly allege a claim of fraud against Skokie Federal. (See Soules v. General Motors Corp. (1980), 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 402 N.E.2d 599; Bank of Lincolnwood v. Comdisco, Inc. (1982), 111 Ill.App.3d 822, 829, 67 Ill.Dec. 421, 444 N.E.2d 657; Zickur v. Irminger (1973), 15 Ill.App.3d 805, 806-07, 304 N.E.2d 635.) In addition, the trial court's dismissal of the complaint for a constructive trust was proper because defendant Skokie Federal was a bona fide purchaser for value of the treasury note. See Sadacca, 128 Ill.App.3d at 256, 83 Ill.Dec. 463, 470 N.E.2d 589.
However, we find that defendants' claim that plaintiff's constructive trust claim is barred by Federal law is erroneous. In D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp. (1942), 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed 956, the United States Supreme Court found that an undisclosed secret verbal agreement may not be used as a defense in an action by the Federal Deposit Insurance Corporation to recover on a note acquired by it from another bank. D'Oench, Duhme & Co., 315 U.S. at 460-62, 62 S.Ct. at 681, 86 L.Ed at 963-64.
Subsequently, the D'Oench, Duhme & Co. ruling was expanded and codified in section 2[13] of the Federal Deposit Insurance Corporation Act. (12 U.S.C. § 1823 (1987).) Section 1823 makes the following provisions:
"No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section * * * either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution[.]" 12 U.S.C. § 1823(e)(1), (2) (1987).
In addition, subsequent Federal cases have protected the RTC and the Federal Deposit Insurance Corporation from any claim that the documents, assets and official records of an insolvent financial institution do not reflect the true agreement of the parties. Federal Deposit Insurance Corp. v. Newhart (8th Cir.1989), 892 F.2d 47, 49; Federal Deposit Insurance Corp. v. Langley (5th Cir.1986), 792 F.2d 541, 545; Chatham Ventures, Inc. v. Federal Deposit Insurance Corp. (5th Cir.1981), 651 F.2d 355, 361; Castleglen, Inc. v. Commonwealth Savings Association (D.Utah 1989), 728 F.Supp. 656, 662-64; Federal Deposit Insurance Corp. v. Simon (N.D.Ill.1985), 607 F.Supp. 1254, 1257.
Defendants maintain that plaintiff's constructive trust claim depends on the contention that the hypothecation agreement does not reflect her true intent with respect to the use of the treasury note. We find that this assertion is erroneous because plaintiff maintains that the language of the hypothecation agreement was sufficient to alert Skokie Federal of her ownership interest in the government security, especially in light of the fact that the agreement did not contain an express grant to Otiswear to transfer the treasury note from the First National Bank of Morton Grove to Skokie Federal, and because the repeated references to the First National Bank of Morton Grove indicate that the entire hypothecation agreement was addressed solely to the First National Bank of Morton Grove with the expectation that the treasury note would be used only by the First National Bank of Morton Grove. Plaintiff does not contend that the hypothecation agreement *963 does not reflect the true agreement of the parties with respect to the use of the treasury note.
For the aforementioned reasons, the trial court's dismissal of count II should be affirmed.

IV
Next, plaintiff alleges that the trial court erroneously dismissed count XI of her third amended complaint which was an action for replevin of the treasury note. Plaintiff and defendant Skokie Federal rely upon section 19-104 of the Code (Ill.Rev. Stat.1987, ch. 110, par. 19-104), and International Harvester Credit Corp. v. Helland (1985), 130 Ill.App.3d 836, 85 Ill.Dec. 922, 474 N.E.2d 882. Defendants also rely upon Wysocki v. Bedrosian (1984), 124 Ill. App.3d 158, 79 Ill.Dec. 564, 463 N.E.2d 1339, Laue v. Leifheit (1983), 120 Ill. App.3d 937, 76 Ill.Dec. 222, 458 N.E.2d 622, and Blum v. City of Chicago (1970), 126 Ill.App.2d 228, 261 N.E.2d 457.
A person may bring an action for replevin to recover his chattel from one who has wrongful possession of the chattel. (International Harvester Credit Corp., 130 Ill. App.3d at 838, 85 Ill.Dec. 922, 474 N.E.2d 882.) Section 19-104 of the Code states the following:
"An action of replevin shall be commenced * * * which describes the property to be replevied and states that the plaintiff in such action is the owner of the property so described, or that he or she is then lawfully entitled to the possession thereof, and that the property is wrongfully detained by the defendant, and that the same has not been taken for any tax, assessment, or fine levied by virtue of any law of this State[] * * * against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against such plaintiff." Ill.Rev. Stat.1987, ch. 110, par. 19-104.
Furthermore, section 2-606 of the Code makes the following provision with respect to exhibits and pleadings: "[T]he exhibit constitutes a part of the pleading for all purposes.". (Ill.Rev.Stat.1987, ch. 110, par. 2-606.) An exhibit is a component of a pleading for purposes of a motion to dismiss. Wysocki v. Bedrosian (1984), 124 Ill.App.3d 158, 162, 79 Ill.Dec. 564, 463 N.E.2d 1339; Laue v. Leifheit (1983), 120 Ill.App.3d 937, 946, 76 Ill.Dec. 222, 458 N.E.2d 622.
We find that count XI of plaintiff's third amended complaint was properly dismissed because plaintiff's replevin claim is barred by the hypothecation agreement. Although plaintiff maintains that she alleged each of the requisite elements of replevin, the pledge of the treasury note as collateral was not wrongful pursuant to the hypothecation agreement. The hypothecation agreement has the following relevant provision:
"[F]or the purpose of enabling said borrower [Otiswear] to obtain credit * * * I do hereby assign, release and transfer unto said borrower all of my right, title and interest in and to said property [the treasury note], and hereby expressly authorize said borrower to pledge or hypothecate all or any part of said property for the indebtedness aforesaid * * *."
Plaintiff attached the hypothecation agreement as an exhibit to the third amended complaint, incorporating its terms as allegations of the complaint for all purposes, including a motion to dismiss. (See Wysocki, 124 Ill.App.3d at 162, 79 Ill.Dec. 564, 463 N.E.2d 1339; Laue, 120 Ill.App.3d at 946, 76 Ill.Dec. 222, 458 N.E.2d 622.) Therefore, Skokie Federal was not in wrongful possession of the treasury note. Accordingly, we rule that the trial court's dismissal of plaintiff's complaint for replevin was proper. See Blum v. City of Chicago (1970), 126 Ill.App.2d 228, 230, 261 N.E.2d 457.

V
Plaintiff next alleges that the trial court erroneously dismissed count XII of her third amended complaint which was an action against defendant Skokie Federal for negligence. Plaintiff maintains that defendant, Skokie Federal, owed her a duty to inquire as to Steven Otis' authority to *964 transfer the treasury note because she was a third party owner of property which was pledged to the bank as collateral for the debt of another. Plaintiff fails to cite any Illinois case which rules that a bank has a duty to a third party owner of collateral which is pledged as an accommodation for the maker of a note. Defendants rely upon Northern Trust Co. v. Burlew (1988), 171 Ill.App.3d 1000, 121 Ill.Dec. 816, 525 N.E.2d 1123, and Swett v. Village of Algonquin (1988), 169 Ill.App.3d 78, 119 Ill. Dec. 838, 523 N.E.2d 594.
"Necessary to any recovery based on negligence is the existence of a duty to conform to a certain standard of conduct for the protection of the plaintiff. [Citations.] It is not sufficient that the plaintiff's complaint merely alleges that a duty exists; the plaintiff must state facts from which the law will raise a duty." Swett, 169 Ill.App.3d at 82, 119 Ill.Dec. 838, 523 N.E.2d 594.
The relationship between a bank and a third party who pledges collateral for a loan is "an ordinary debtor-creditor relationship." (Northern Trust Co. v. Burlew (1988), 171 Ill.App.3d 1000, 1003, 121 Ill. Dec. 816, 525 N.E.2d 1123.) In order to establish the existence of a fiduciary relationship, a party must demonstrate that it placed confidence and trust in another who thereby obtained superiority or influence over said party. Northern Trust Co., 171 Ill.App.3d at 1003, 121 Ill.Dec. 816, 525 N.E.2d 1123; Edwards v. Miller (1978), 61 Ill.App.3d 1023, 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.
In count XII, plaintiff alleged that "Skokie Federal had a duty to obtain Frankel's consent to use of the T-Note and to have her execute a new hypothecation agreement." However, plaintiff failed to allege facts which would demonstrate that defendant Skokie Federal had a duty to her. Absent this fundamental element, a negligence claim fails. (See Swett v. Village of Algonquin (1988), 169 Ill.App.3d 78, 82, 119 Ill.Dec. 838, 523 N.E.2d 594.) In addition, plaintiff had no fiduciary or confidential relationship with defendant Skokie Federal. (See Northern Trust Co., 171 Ill.App.3d at 1003, 121 Ill.Dec. 816, 525 N.E.2d 1123; Edwards, 61 Ill.App.3d at 1027, 19 Ill.Dec. 82, 378 N.E.2d 583.) Accordingly, we rule that the trial court's dismissal of count XII of plaintiff's third amended complaint was proper.

VI
Finally, we turn our attention to plaintiff's allegations that defendant Skokie Federal violated suretyship laws, that its security interest in the collateral was not perfected, and that renewals of the treasury note may not be maintained under the hypothecation agreement. Plaintiff relies upon In the Matter of Martin Grinding & Machine Works (7th Cir.1986), 793 F.2d 592, In re Marriage of Rodriguez (1988), 175 Ill.App.3d 241, 124 Ill.Dec. 838, 529 N.E.2d 819, Suslick v. Rothschild Securities Corp. (1987), 164 Ill.App.3d 589, 115 Ill.Dec. 189, 517 N.E.2d 600, Palen v. Cullom Capital Woodworking (1987), 154 Ill. App.3d 685, 107 Ill.Dec. 171, 506 N.E.2d 1062, Michael v. First Chicago Corp. (1985), 139 Ill.App.3d 374, 93 Ill.Dec. 736, 487 N.E.2d 403, Motz v. Central National Bank (1983), 119 Ill.App.3d 601, 75 Ill.Dec. 137, 456 N.E.2d 958, Rahill Corp. v. Urbanski (1984), 123 Ill.App.3d 769, 79 Ill. Dec. 211, 463 N.E.2d 765, Allis-Chalmers Corp. v. Staggs (1983), 117 Ill.App.3d 428, 72 Ill.Dec. 840, 453 N.E.2d 145, Watkins Products, Inc. v. Walter (1973), 11 Ill. App.3d 417, 296 N.E.2d 859, Ocean National Bank of Kennebunk v. Diment (Me.1983), 462 A.2d 35, and Val-U Construction Co. of South Dakota, Inc. v. Contractors, Inc. (1983), 213 Neb. 291, 328 N.W.2d 774.
Defendants maintain that plaintiff has waived her right to appellate review of these allegations. Defendants rely upon Western Casualty & Surety Co. v. Brochu (1985), 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872, and Shell Oil Co. v. Department of Revenue (1983), 95 Ill.2d 541, 70 Ill.Dec. 191, 449 N.E.2d 65.
"It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal." (Western Casualty & Surety *965 Co., 105 Ill.2d at 500, 86 Ill.Dec. 493, 475 N.E.2d 872; see also Shell Oil Co., 95 Ill.2d at 550, 70 Ill.Dec. 191, 449 N.E.2d 65; Suslick v. Rothschild Securities Corp. (1987), 164 Ill.App.3d 589, 592, 115 Ill.Dec. 189, 517 N.E.2d 600.) Plaintiff has claimed that she is a surety for the very first time before this court. Similarly, the contentions regarding perfection and the use of renewals of the treasury note were not alleged in plaintiff's third amended complaint or raised in response to defendant Skokie Federal's motion to dismiss. Instead, these contentions were introduced for the first time in plaintiff's motion for rehearing. Accordingly, we rule that plaintiff has waived her right to appellate review of her allegations that defendant Skokie Federal violated suretyship laws, that its security interest in the collateral was not perfected, and that renewals of the treasury note cannot be maintained under the hypothecation agreement.
For the aforementioned reasons, we affirm the trial court's verdict.
Affirmed.
LINN and McMORROW, JJ., concur.