CHARLOTTE HAMMOND, Plaintiff-Appellee, v. NORTH AMERICAN AS-
BESTOS CORPORATION *et al*, Defendants (Great Lakes Carbon Corpora-
tion, Defendant-Appellee; Grefco, Inc., Defendant-Appellant).

Fourth District   No. 4—90—0461

Opinion filed January 23, 1991.

James C. Craven and Donald M. Craven, both of Craven Law Offices, of Springfield, and J. Timothy Eaton, Daniel P. Albers, and Barbara J. Anderson, all of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellant.

Law Offices of Strodel, Kingery & Durree, Associated, of Peoria, and James Walker, Ltd., of Bloomington (Steven A. Wakeman, of counsel), for appellee Great Lakes Carbon Corporation.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Charlotte Hammond filed a negligence action on October 22, 1987, against Great Lakes Carbon Corporation (Great Lakes), General Refractories, Inc. (General), Grefco, Inc. (Grefco), and others for injuries allegedly sustained due to exposure to diatomaceous earth. The trial court granted Great Lakes' motion for summary judgment after finding any liability Great Lakes had for plaintiff's injuries was assumed by Grefco by contract dated March 24, 1966. Grefco appeals the summary judgment order, arguing (1) it has standing to appeal the order; (2) it is not collaterally estopped from raising an issue

regarding the 1966 contract; (3) the 1966 contract was intended to include only the fixed and choate obligations of Great Lakes; (4) the express negation clause in the 1966 contract bars plaintiff from suing Grefco; (5) Great Lakes' tort liability cannot be delegated by contract to Grefco; and (6) the trial court erred in entering findings under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) as to that portion of the order entered on the summary judgment motion which was not final. For the reasons that follow, we affirm.

In her complaint, plaintiff alleged her husband was employed at a plant in Bloomington from 1953 to 1971. During this time, Grefco, Great Lakes, and General sold a substance known as diatomaceous earth to the plant owners and plaintiff's husband was exposed to this substance while working at the plant. Plaintiff was exposed to the substance through her husband's clothing which contained particles of it. Plaintiff alleged she inhaled these particles and contracted pulmonary fibrosis, a lung disease caused by exposure to diatomaceous earth. Plaintiff alleged Great Lakes, Grefco, and General (1) knew of the hazards of exposure to diatomaceous earth; (2) knew the plant's employees were ignorant of the hazards; (3) failed to warn the employees of the risks of exposure to diatomaceous earth, including the risk of pulmonary fibrosis; and (4) failed to provide adequate safety instructions for the handling and processing of diatomaceous earth. In its answer, Great Lakes denied the plaintiff's allegations.

In its motion for summary judgment, Great Lakes alleged that by contract between Great Lakes and General in 1966, Grefco assumed all of the debts and liabilities and obligations of Great Lakes. Further, Great Lakes argued the issue of Grefco's assumption of Great Lakes' tort liability to plaintiff was decided in Great Lakes' favor in *Kessinger v. Grefco, Inc.* (7th Cir. 1989), 875 F.2d 153. Thus, Great Lakes was entitled to judgment in its favor.

In its order dated May 9, 1990, the trial court granted summary judgment to Great Lakes. The order also included the following language:

> "This decision is intended and shall be the law of the case insofar as it involves the rights and liabilities between Great Lakes Carbon Corporation and Grefco, Inc. or the construction and interpretation of the contractual documents involved in the 1966 sale of assets involving Great Lakes Carbon, General Refractories, and Grefco. Grefco shall not be allowed to reargue or relitigate these issues or its liability for the debts and liabilities of Great Lakes Carbon, involving exposure to diatomaceous earth mined, manufactured, distributed or sold, by Great Lakes

Carbon Corporation on and prior to May 16, 1966."
The order included findings under Supreme Court Rule 304(a).

Plaintiff is not appealing the order granting summary judgment for Great Lakes. Grefco was permitted by this court to file a late notice of appeal from the order entering judgment in favor of Great Lakes.

We first consider Grefco's standing to appeal the judgment in favor of its codefendant, Great Lakes. Initially, Grefco points out the issue of its standing to appeal the summary judgment order was decided in its favor by the trial court, when it granted Grefco's request on April 18, 1990, for findings under Supreme Court Rule 304(a), and by this court when it allowed Grefco to file a late notice of appeal, and thereby rejected plaintiff's claim that Grefco had no standing to appeal the order to this court. Further, Grefco contends it has standing because the order is adverse to its interests and it was prejudiced by the order. Specifically, Grefco argues (1) the order could have collateral estoppel effects on related insurance coverage litigation which could prejudice Grefco; (2) Great Lakes could argue the order has collateral estoppel effects on all future litigation against Great Lakes for its pre-1966 conduct; and (3) the order affects Grefco's interests in all potential future actions because it requires future plaintiffs to sue Grefco alone for their injuries and thereby increases Grefco's potential tort liability.

Plaintiff argues Grefco lacks standing to maintain this appeal because the only prejudice to Grefco from the order stems from that portion of the order which is not final and, therefore, not before this court. Plaintiff also points out that Grefco raises this same issue in its brief. Plaintiff also contends that since Grefco has not filed any third-party action against Great Lakes, it has not suffered any prejudice from the order.

■ Any party to a case may seek appellate review from a final judgment which is adverse to his interests. (*St. Mary of Nazareth Hospital v. Kuczaj* (1988), 174 Ill. App. 3d 268, 528 N.E.2d 290.) When judgment is entered in favor of one codefendant, the general rule is that only the plaintiff may appeal the judgment. (*Kuczaj*, 174 Ill. App. 3d at 270-71, 528 N.E.2d at 292, citing *Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 446 N.E.2d 1271.) However, as the *Kuczaj* court noted, the application of this rule is limited to those cases where the rights of the appellant are not affected by the judgment entered. (*Kuczaj*, 174 Ill. App. 3d at 271, 528 N.E.2d at 292.) In *Tisoncik*, the court determined a codefendant had no standing to appeal a directed verdict for another codefendant because the

appealing defendant had not filed a claim for contribution while the action was pending as required by "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1981, ch. 70, par. 305). That court stated:

> "As between codefendants, a judgment for or against one of them does nothing but establish their respective rights and liabilities toward the plaintiff, unless the issues between the codefendants were actively litigated in the action. [Citation.] The issues relevant to contribution action were not resolved in the instant case, and thus [the appealing defendant] cannot claim that its interest was prejudiced by [the other defendant's] dismissal." *Tisoncik*, 113 Ill. App. 3d at 244, 446 N.E.2d at 1274.

Plaintiff maintains the rule as set forth by the court in *Tisoncik* applies to this case and bars Grefco from appealing the summary judgment order because Grefco has not (1) filed a claim for contribution or indemnity against Great Lakes or (2) actively litigated the issue of Great Lakes' liability to plaintiff in the trial court.

Grefco urges the reasoning of the court in *Kuczaj* is readily applicable to this case. In *Kuczaj*, a hospital sued a divorced couple under the family expense statute (Ill. Rev. Stat. 1987, ch. 40, par. 1015) to collect for hospital charges incurred by the wife while separated, but not yet divorced, from her husband. Summary judgment was entered for the husband and the wife appealed. The court concluded the wife had standing to appeal the judgment for the husband in spite of the lack of a counterclaim filed in the trial court because (1) the interests of the husband and wife were clearly adverse; and (2) the judgment for the husband was prejudicial to the wife's case against the hospital.

We find the *Kuczaj* case persuasive authority on the standing issue and conclude Grefco has standing to bring this appeal. Great Lakes' and Grefco's interests in this litigation are adverse to each other. Thus, the order in favor of Great Lakes is prejudicial to Grefco. Moreover, at this stage of the proceedings in the trial court, we do not find Grefco's failure to file a claim against Great Lakes for contribution determinative regarding the standing issue.

We now turn to the merits of Grefco's appeal. Great Lakes asserted two arguments in the trial court in support of its motion for summary judgment: the 1966 contract was an assumption contract whereby Grefco agreed to assume all of Great Lakes' debts and liabilities and the issue of assumption of liabilities, previously decided in *Kessinger*, is *res judicata* on this issue. Grefco argues on appeal that the contract is one of indemnity, not assumption, and the *Kessinger* case has no *res judicata* or collateral estoppel effects in this litigation.

We first consider the *res judicata* issue. Before we proceed, we first must examine the provisions of the 1966 contract between these parties.

In 1966, Great Lakes decided to sell all of the assets of its mining and mineral products division (Division) to General. On March 24, 1966, Great Lakes and General signed a purchase and sale agreement. In the agreement, General promised to deliver to Great Lakes at the closing an undertaking, whereby General assumed and agreed to pay and discharge all of the debts, obligations, contracts, and liabilities of the Division. The undertaking, dated May 16, 1966, stated in pertinent part:

"General *** assumes and agrees to pay or cause to be paid, or otherwise discharge or cause to be discharged to the extent that they are existing and outstanding on the date hereof or may hereafter accrue, as they become due and payable, all liabilities, debts and obligations of, or attributable to, the *** Division of Great Lakes *** as are assumed by General under the terms of an Agreement dated March 24, 1966, by and between Great Lakes and General ***."

The purchase and sale agreement, dated March 24, 1966, further included the following clause:

"This Agreement shall inure to the benefit of and be binding upon Great Lakes and General and their respective successors and assigns; nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies under or by reason of this Agreement."

The agreement also provided it was to be construed in accordance with the laws of Pennsylvania. After purchasing the assets of the Division, General assigned all the Division's assets to its newly formed subsidiary, Grefco.

■■ Both *res judicata* and collateral estoppel operate to preclude multiple actions involving the same issues and parties, the latter being narrower in scope. (*Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 454 N.E.2d 379.) The doctrine of *res judicata* provides a valid judgment in a previous action between the parties bars a subsequent action between those parties on the same claim or cause of action. (*City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305.) Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first; *i.e.*, where the causes of actions are based upon a common core of operative fact. (*Decatur Housing Authority*, 117 Ill. App. 3d at 1081, 454 N.E.2d at 382.) This doctrine applies not

only to those issues which were actually raised in the first proceeding, but also to any issues which might have been raised in that proceeding. *Kahler v. Don E. Williams Co.* (1978), 59 Ill. App. 3d 716, 375 N.E.2d 1034.

■ Collateral estoppel precludes parties from relitigating *an issue* in a subsequent proceeding where that issue was actually or necessarily decided by a court of competent jurisdiction in an earlier proceeding involving the same parties in a different cause of action. (*Smith v. Bishop* (1962), 26 Ill. 2d 434, 187 N.E.2d 217; *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 375, 444 N.E.2d 205, 208.) For a judgment in a prior proceeding to have collateral estoppel effect in a subsequent action:

> "[I]t is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily decided by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court, the estoppel will not be applied, for the reason that the court may have decided upon one of the other issues of fact." *Decatur Housing Authority*, 117 Ill. App. 3d at 1082, 454 N.E.2d at 383.

■ ■ In determining what has been adjudicated in a prior proceeding, the court examines the judgment actually entered with respect to the issues presented for review, rather than only the opinion rendered. (*Adams v. Pearson* (1952), 411 Ill. 431, 437, 104 N.E.2d 267, 270.) Additionally, the court looks to the proceedings in the earlier case to ascertain what the issues were and how they were resolved. (*Mateyka v. Smith* (1964), 47 Ill. App. 2d 1, 4, 197 N.E.2d 157, 159.) The burden of establishing the defense of collateral estoppel is on the party invoking it. That party must show with clarity and certainty the precise issues and judgment in the former action. *City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 1120, 418 N.E.2d 63, 72.

In *Kessinger*, the plaintiff filed a diversity action similar to the instant action against Grefco for injuries due to his exposure to diatomaceous earth while employed at the same plant in Bloomington. Grefco filed a third-party complaint for indemnity and contribution against Great Lakes. The district court granted summary judgment for Great Lakes on Grefco's third-party complaint. On appeal, in re-

sponse to Grefco's assertion that Illinois and not Pennsylvania law should govern the construction of the 1966 contract, the court of appeals noted there was no difference between Illinois and Pennsylvania law regarding the tort liabilities of the parties. Further, the court stated there was no ambiguity in the contract wherein General agreed to assume *all* of Great Lakes' liabilities. Therefore, the court affirmed the district court's entry of summary judgment for Great Lakes.

Great Lakes argues Grefco is barred by the principles of *res judicata* from arguing the issue of its liability to plaintiff pursuant to the 1966 contract. According to Great Lakes, the same cause of action is present here as was involved in *Kessinger*; that is, the dispute between Great Lakes and Grefco regarding responsibility for third parties' injuries. In the trial court, Great Lakes relied on collateral estoppel to bar Grefco from relitigating this issue. Grefco contends *res judicata* has no application in this case because *Kessinger* involved a different cause of action. According to Grefco, the *Kessinger* court merely determined that Grefco could not file a third-party complaint for indemnity and contribution against Great Lakes which is not the same issue as (1) whether Great Lakes had any direct liability to future injured plaintiffs or (2) whether Grefco alone could be sued for Great Lakes' pre-1966 tortious conduct. Grefco argues that the liability here has not "become due and payable." Thus, Grefco maintains *Kessinger* has no collateral estoppel effects in the pending action.

■ We conclude it is not necessary to determine whether *Kessinger* involved the same cause of action as presented in the case before us for the reason that *Kessinger* decided the issue Grefco now raises and, therefore, that decision bars relitigation of this issue.

The reviewing court in *Kessinger* affirmed the district court's order granting summary judgment to Great Lakes on Grefco's third-party complaint for indemnity and contribution. That court made the following statement regarding the 1966 contract:

> "Unfortunately for Grefco, the parties agreed that General would assume *all* of [Great Lakes'] liabilities. We do not find any ambiguity in that wording." (Emphasis in original.) (*Kessinger*, 875 F.2d at 155.)

The district court's order granting summary judgment to Great Lakes in *Kessinger* clearly establishes the basis for its decision was the 1966 contract. The Federal district court judge in *Kessinger* relied on *Philadelphia Electric Co. v. Hercules, Inc.* (3d Cir. 1985), 762 F.2d 303, which construed Pennsylvania law, and found Grefco *assumed* all Great Lakes' debts and liabilities by the 1966 contract. The trial judge went on to state:

"Grefco must bear the ultimate responsibility for Plaintiff's purported loss. \*\*\*

\*\*\* The contracts were for the purchase of an entire division of Great Lakes with the clear intention of carrying its business forward. \*\*\* *Responsibility for lawsuits was an obvious incident to the performance of the agreements.* Grefco, having entered into an arm's length bargain, cannot now cry foul." (Emphasis added.) (*Kessinger v. General Mining Union Corporation, Grefco, Inc.* (C.D. Ill. Oct. 20, 1987), No. 85—3092, slip op. at 5-6 (unpublished order).)

The policies underlying *res judicata* and collateral estoppel include, *inter alia*, certainty and finality to litigation and consistency of judgments. (*Osborne v. Kelly* (1991), 207 Ill. App. 3d .488.)We conclude *Kessinger* bars Grefco from relitigating any issues regarding the 1966 contract.

■ In its reply brief, Grefco asserts that collateral estoppel has no application to this case because there is no *action* or *lawsuit* between Great Lakes and Grefco in this case. We find no merit to this argument. Grefco further argues the *Kessinger* court did not decide what Great Lakes' defense obligations were or whether Great Lakes remains originally liable to tort plaintiffs for its pre-1966 conduct. We disagree. As stated previously, the district court's order clearly shows that the effect of the 1966 contract on a case such as that before us was considered. Grefco has had a full opportunity to litigate this issue and is not entitled to litigate the matter twice. *Chas. Ind Co. v. Cecil B. Wood, Inc.* (1965), 56 Ill. App. 2d 30, 38, 205 N.E.2d 786, 790.

In light of our conclusion on this issue, we need not address Grefco's remaining issues. The order of the trial court is affirmed.

Affirmed.

SPITZ and KNECHT, JJ., concur.