**U–HAUL INTERNATIONAL, INC., U–Haul Co. of North Carolina, Inc., U–Haul Co. of the West Coast of Florida, and U–Haul Co. of Michigan, Appellants–Defendants,**

v.

**NULLS MACHINE AND MANUFACTURING SHOP, Kraft Fluid Systems, Inc., and Hydraforce, Inc., Appellees–Defendants.**

No. 49A02–9908–CV–569.

Court of Appeals of Indiana.

Sept. 26, 2000.

Rehearing Denied Nov. 21, 2000.

Rodney V. Taylor, Michael C. Peek, Christopher & Taylor, Indianapolis, Indiana, Attorneys for Appellants.

M. Michael Stephenson, McNeely Stephenson Thopy & Harrold, Shelbyville, Indiana, Attorney for Appellees.

## OPINION

FRIEDLANDER, Judge

This action stems from a vehicular collision that caused the deaths of Francis J. Radwan and his passenger, Kathy Wade. Radwan's estate (the Estate) filed suit against forty-five defendants, including the parties in this appeal. Defendants U–Haul International, Inc., U–Haul Company of North Carolina, Inc., U–Haul Company of the West Coast of Florida, Inc, and U–Haul Company of Michigan (hereinafter collectively referred to as "U–Haul") filed this appeal against co-defendants Nulls Machine and Manufacturing Shop (Nulls), Kraft Fluid Systems, Inc. (Kraft), and Hydraforce, Inc. (unless otherwise indicated, hereinafter collectively referred to as "the Valve Defendants"). U–Haul and, upon cross-appeal, the Valve Defendants present the following restated issues for review:

1. Did U–Haul have standing to challenge the summary judgment ruling in favor of the Valve Defendants?

2. Did the trial court err in granting summary judgment in favor of the Valve Defendants?

We affirm.

The facts[1] favorable to the nonmoving parties are as follows. On June 8, 1995, Radwan was operating an automobile eastbound on Interstate 74 in Dearborn County, Indiana. Willie Felton, who was operating a rented U–Haul truck, was also traveling eastbound on I–74 and was following immediately behind Radwan's automobile. Felton's U–Haul truck was tow-ing a U–Haul auto transport trailer (the trailer). Radwan approached a road construction zone where the highway narrowed to one lane in each direction. He slowed his vehicle in compliance with the reduced speed signs controlling traffic in the construction zone. Felton attempted to slow his vehicle, but the brakes on the trailer did not work. The U–Haul truck struck Radwan's automobile from behind, sending Radwan's auto across the road and into westbound traffic. Radwan's vehicle struck head-on a vehicle being driven by Billy Savage. Radwan and Wade were fatally injured in the accident. Police officers present at the scene of the accident examined the trailer's brake system and observed that the master cylinder was dry, with some surface rust apparent inside the master cylinder.

The Estate originally sued U–Haul, among others. In its answer, U–Haul asserted nonparty defenses naming several entities, including the Valve Defendants. The nonparty defenses against the Valve Defendants were premised on the claim that if the brakes on the trailer were inoperable, it was in part because of a defective backup return valve (the valve) on the left front brake caliper, which was a component of the trailer's brake assembly. The valve was manufactured by Hydraforce, which sold it to Kraft, which sold it to Nulls, which sold it to U–Haul. The Estate amended its complaint, adding as defendants all of the entities that U–Haul indicated it would name as nonparty defendants, including the Valve Defendants. The Estate asserted a products liability theory of negligence against the Valve Defendants, claiming that the valve was defective. The allegations against each of the Valve Defendants were identical, and included the following:

(a) negligently designed, manufactured, tested, and assembled the valve;

---

1. We hereby grant U–Haul's Petition To Supplement Record, which was filed on April 24, 2000.

(b) failed to use reasonable care in the testing, manufacturing, and marketing of said valve, which was inherently, imminently, and unreasonably dangerous;

(c) negligently designed the valve when they knew or should have known that the design would result in the breakdown of certain components within the brake system and expose users to unreasonable risk of harm from the valve's design and manufacture;

(d) failed to properly inspect and test the brake valve and to use a manufacturing process that ensured reasonable safety and prevented injury to persons such as the Plaintiff;

(e) failed to properly test and inspect the brake valve which would have revealed its dangerous and defective condition and malfunction;

(f) failed to properly assemble the valve;

(g) failed to use reasonable care in the testing and inspection of the brake valve in its inherent, imminent and unreasonably dangerous condition;

(h) distributed the defective brake valve to U–Haul International, Inc. or other U–Haul entity [sic] when they knew or should have known that the brake valve was defective and that it would result in the breakdown of the trailer brake system and expose users to an unreasonable risk of harm which in this case resulted in the deaths of two (2) people;

(i) failed to adequately warn of the brake valve's defective nature when it knew or should have known that the defective brake valve would expose users to an unreasonable risk of harm in the absence of adequate and proper warnings and instructions; and

(j) failure [sic] to exercise reasonable care in selling, leasing, or otherwise putting into the stream of commerce a product in a defective condition unreasonably dangerous to a user or consumer or to the user's or consumer's property, subjecting the [defendant] to liability for physical harm caused by the defective condition under I.C. 33–1–1.5–3.

*Record* at 107–08.

Each of the Valve Defendants filed separate motions for summary judgment, claiming that the Estate's products liability action failed because the Estate had failed to designate evidence tending to show that the brake valve was defective and was a proximate cause of the accident. The trial court granted each of the Valve Defendant's motions. Although summary judgment was granted in favor of the Valve Defendants and against the Estate, co-defendant U–Haul filed a motion to correct error challenging the ruling. The trial court denied U–Haul's motion to correct error and U–Haul filed the instant appeal.

## STANDARD OF REVIEW

When reviewing a grant of summary judgment, we apply a well-settled standard of review. Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of specifically designating materials that make a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Interstate Cold Storage, Inc. v. General Motors Corp.*, 720 N.E.2d 727 (Ind.Ct.App.1999). If these two requirements are met, the burden shifts to the nonmovant to set forth designated facts showing the existence of a genuine issue for trial. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.* at 729. Even if the facts are not in dispute, sum-

mary judgment is inappropriate where the record reveals that the law was not correctly applied. *General Accident Ins. Co. of America v. Hughes,* 706 N.E.2d 208 (Ind.Ct.App.1999), *trans. denied.*

Our task when reviewing a ruling on a summary judgment motion is the same as that of the trial court. Considering only those matters which were designated to the trial court, and liberally construing the designated evidentiary material in a light most favorable to the nonmoving party, we determine whether there is a genuine issue of material fact for trial. *Id.* The party against whom summary judgment was granted has the burden to persuade us that the trial court erred. *Id.* The trial court is not required to enter specific findings and conclusions. We are not limited to granting or denying summary judgment upon the same basis that the trial court made its decision. *Jones v. Western Reserve Group,* 699 N.E.2d 711 (Ind.Ct.App. 1998), *trans. denied.* Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Interstate Cold Storage, Inc. v. General Motors Corp.,* 720 N.E.2d 727.

### 1.

■■■ As a threshold issue, the Valve Defendants contend that co-defendant U–Haul lacks standing to challenge the grant of summary judgment in the Valve Defendants' favor. In order to have standing to challenge the dismissal of a co-defendant from a lawsuit, the challenging party must demonstrate that it has a stake in the outcome of the ruling. *Shand Mining, Inc. v. Clay County Bd. of Comm'rs,* 671 N.E.2d 477 (Ind.Ct.App.1996), *trans. denied.* To show that it has a personal stake, a party must demonstrate, at a minimum, that it was in immediate danger of sustaining a direct injury as a result of the conduct at issue. *Id.* Generally, "[o]ne defendant does not have standing to appeal a judgment rendered in favor of a co-defendant unless the defendant suffers some prejudice as a result of the entry of

judgment in favor of the co-defendant." *Id.* at 479. Therefore, in order to have standing, U–Haul must demonstrate that it was prejudiced by the Valve Defendants' summary dismissal from the case.

■■■ U–Haul contends that it was prejudiced by the summary dismissal because of the application of Indiana's Comparative Fault Act (the Act). *See* Ind. Code Ann. § 34–51–2 et seq. (West 1999). In an action brought under the Act, the jury must allocate 100 percent of the fault among all culpable parties and nonparties. IC § 34–51–2–8. A nonparty is a party that caused or contributed to the cause of the alleged injury, but which has not been joined in the action as a defendant. IC § 34–51–2–14. A party that has been dismissed from an action may not be named as a nonparty. *Handrow v. Cox,* 575 N.E.2d 611 (Ind.1991); *Rausch v. Reinhold,* 716 N.E.2d 993 (Ind.Ct.App.1999). U–Haul argues that, having been dismissed from the action, the Valve Defendants may not be named as nonparties and any fault the jury would have allocated to them must be allocated instead to the remaining defendants, including U–Haul. As a result, U–Haul contends, it is prejudiced by the Valve Defendants' summary dismissal because it is exposed to a chance of greater liability for damages resulting from the accident.

We find no Indiana case that is directly on point concerning whether a co-defendant has standing to challenge a summary judgment ruling that operates to dismiss another co-defendant from the case. Several Indiana cases lend guidance, but those cases arose in a slightly different procedural posture. We will discuss those cases later in this opinion. In addition, our research reveals that several other states have addressed this or a similar question. We begin our analysis by examining three of those cases that are similar to the instant case. We note at the outset that the three states in which those cases arose, Illinois, Washington, and Wisconsin, recognize the concept of comparative fault. *See*

735 ILCS 5/2–1116 & –1117 (1992 and Supp.2000) (Illinois); Wash. Rev.Code Ann. § 4.22.070 (Supp.2000); Wis. Stat. Ann. § 895.045 (1996).

In *Hammond v. North American Asbestos Corp.*, 207 Ill.App.3d 556, 152 Ill.Dec. 425, 565 N.E.2d 1343 (1991), *appeal denied*, the plaintiff filed a negligence action against three corporate entities for injuries allegedly sustained as a result of exposure to contaminated earth. One of the three defendants, the Great Lakes Carbon Corporation (Great Lakes), submitted a motion for summary judgment on the basis that it had entered into a contract with another defendant, Grefco, Inc., in which Grefco agreed to assume all of the debts, liabilities, and obligations of Great Lakes. The motion was granted and Grefco appealed. Great Lakes contended that Grefco did not have standing to appeal the ruling.

The Illinois court ruled that Grefco had standing to challenge the summary judgment entered in favor of Great Lakes. The court began by citing the principle that a party in that state may seek appellate review of a final judgment that is adverse to its interest. The court then observed that a judgment entered in favor of one defendant generally may be appealed only by the plaintiff. *Id.* (citing *St. Mary of Nazareth Hosp. v. Kuczaj*, 174 Ill.App.3d 268, 123 Ill.Dec. 745, 528 N.E.2d 290 (1988)). The latter principle, however, was applicable only in cases where the rights of the appellant were not affected by the judgment entered. In other words, a co-defendant could appeal a judgment in favor of another co-defendant if the judgment in question affected the complaining co-defendant's interest in the litigation. The court concluded that this principle did not apply and that co-defendant Grefco had standing to appeal the ruling in favor of Great Lakes. In so doing, the court reasoned that the parties' interests were adverse to one another, and therefore the dismissal of Great Lakes affected Grefco. *Id.*

In *Koller v. Liberty Mut. Ins. Co.*, 190 Wis.2d 263, 526 N.W.2d 799 (Ct.App.1994), Howard Immel, Inc. (Immel) was a general contractor hired to build a store by Shopko Stores, Inc. Immel hired DHO, Inc. as a subcontractor to perform the masonry work on the project. After construction began, several workers were injured or killed when a brick wall collapsed at the construction site. The injured employees and their representatives sued Immel and Shopko. Immel filed a third-party complaint against DHO alleging that DHO had a contractual obligation to indemnify Immel. Shopko filed a motion for summary judgment, contending that it was not negligent as a matter of law because it had no control over the methods of construction that were employed at the project. The motion was granted and DHO appealed.

Shopko contended upon appeal that DHO did not have standing to appeal the grant of summary judgment in favor of Shopko. The court cited the principle that the right to appeal a judgment is limited to parties that were aggrieved by the judgment. The court observed that a party is "aggrieved if the judgment bears directly and injuriously upon his or her interests." *Id.* at 800. Concluding that DHO had standing to appeal the judgment because it was sufficiently aggrieved thereby, the court explained:

It has been held that 'in an action for negligence, the jury must be given the opportunity to consider the possible negligence of all persons, whether parties or not, who might have contributed to the total negligence.' *Hauboldt v. Union Carbide Corp.*, 160 Wis.2d 662, 467 N.W.2d 508, 518 (1991). This is where DHO's interest lies. DHO has a direct interest in the apportionment of negligence in the cause of the plaintiffs' injuries. It will have to indemnify Immel to the extent of negligence assigned to it. The dismissal of Shopko as a matter of law diminishes the potential pool of entities to whom negligence can be assigned

and thereby increases DHO's potential liability. Thus, we conclude that DHO is aggrieved by the judgment dismissing Shopko. It has standing to appeal. *Koller v. Liberty Mut. Ins. Co.*, 526 N.W.2d at 801.

The third non-Indiana case we consider is *Tinker v. Kent Gypsum Supply, Inc.*, 95 Wash.App. 761, 977 P.2d 627 (1999), *review denied.* In *Tinker*, a Gypsum employee was driving a company truck when he struck and injured a child. The victim's parents sued a nearby Kentucky Fried Chicken restaurant (KFC), alleging that it negligently placed its water sprinklers on the front lawn, thereby forcing the child to walk into the street to avoid the water. In its answer, KFC asserted that the driver of the truck was at fault. The plaintiffs filed an amended complaint in which they added Gypsum as a defendant. Gypsum asserted a contingent cross-claim against KFC, reserving a right of contribution from KFC in the event that Gypsum was found liable for the child's injuries. KFC did not answer the cross-claim or assert its own cross-claim.

Gypsum subsequently filed a summary judgment motion, which the trial court granted on June 7, 1997. The trial court also granted the plaintiff's motion to strike KFC's affirmative defense with respect to the responsibility of other entities. KFC filed a motion to reconsider the granting of the motion to strike, which the trial court denied. KFC sought discretionary appellate review of the denial of the motion to strike, and the appellate court declined the request. The plaintiff and KFC settled a week before the scheduled trial date. In an order approving the settlement,[2] the trial court stated that the settlement order "did not apply to or affect any claims by defendant [KFC] for contribution against defendant Kent Gypsum Supply, Inc." *Id.* at 628. On March 10, 1998, after settling with the plaintiff, KFC appealed the June 1997 summary judgment order and served Gypsum with an answer to Gypsum's con-tingent cross-claim, as well as with a cross-claim of its own. Gypsum asserted that KFC did not have standing to appeal the summary judgment order entered in favor of Gypsum and against the plaintiff.

The court noted that Washington procedural rules provide that a cross-claim cannot be asserted against a party who was dismissed from the action previous to the assertion of the cross-claim. The court then sought to juxtapose the procedural rule with the principle that an aggrieved party (defined in this context as one who has a "present substantial interest, as distinguished from a mere expectancy, or . . . contingent interest" in the subject matter) may seek review by an appellate court. *Id.* at 629. The court concluded,

> Although no Washington case addresses the specific issue of whether a defendant has standing to contest the dismissal of a codefendant against whom the defendant has not cross-claimed, KFC's interest in the summary judgment proceeding was neither present nor substantial, as evidenced by its failure to contest [Gypsum's] summary judgment motion in any meaningful way. KFC has never asserted a legitimate cross-claim against [Gypsum]. While it may have hoped that a jury would eventually apportion liability between the two, this hope was contingent on several factors over which KFC had no control. Because it did not assert a cross-claim when it had ample opportunity to do so, KFC cannot now argue that it has a cognizable interest in [Gypsum's] motion to dismiss.

*Id.*

*Tinker* differs from *Koller* and *Hammond* in that the Washington court determined that a co-defendant did not have standing to challenge a ruling favorable to another co-defendant, while the Illinois and Wisconsin courts reached the opposite conclusion. Notwithstanding this obviously significant difference, which we will discuss later, several common principles

2. In Washington, court approval is necessary for settlements involving minors.

emerge from the three cases. First, all three start with the proposition that, in order to have standing to challenge a co-defendant's dismissal from the action, a remaining defendant must demonstrate that it is somehow aggrieved by the ruling favorable to its former co-defendant. Although the Illinois court phrased this requirement differently (*i.e.*, the relevant co-defendants' interests must be adverse to one another), the practical reality is the same in all three jurisdictions: the remaining co-defendant must prove that the ruling that was in the best interest of the dismissed party was prejudicial to its own interests in the litigation. At this point, however, the *Hammond* and *Koller* cases diverge from *Tinker*. In *Hammond* and *Koller*, the courts proceeded directly to an analysis of whether the remaining co-defendants' interests warranted a finding of standing. In both cases, the court concluded that the remaining co-defendant's interests were prejudiced by virtue of the fact that it was exposed to the possibility of absorbing whatever liability would have been attributed to the dismissed co-defendant.

*Tinker* differed from the other two in that, before the appellate court considered the complaining co-defendant's interests—or perhaps more accurately, as a component of that analysis—it first considered whether that party had preserved its right to appeal the ruling. The court noted that the complaining party had done nothing at the time to oppose the summary judgment motion, or to assert an interest contrary to that of the co-defendant seeking dismissal. The remaining co-defendant's actions in that regard came after its settlement with the plaintiff, and that action consisted of the filing of, in effect, a cross-claim for indemnity. Noting that the filing of the cross-claim was untimely pursuant to Washington procedural rules, the court concluded that the complaining co-defendant had done nothing and therefore did not preserve the issue.

The dichotomy of the two approaches reflected above presents this court with a choice between two distinct analyses. Under the first analysis, a remaining co-defendant has standing to challenge the dismissal of a co-defendant via summary judgment, so long as the remaining co-defendant can demonstrate that the dismissal of its co-defendant negatively impacted the complaining party's interests in the litigation. *See, e.g., Hammond v. North American Asbestos Corp.*, 207 Ill. App.3d 556, 152 Ill.Dec. 425, 565 N.E.2d 1343; *Koller v. Liberty Mut. Ins. Co.*, 190 Wis.2d 263, 526 N.W.2d 799. Under the second analysis, before considering the nature of the complaining co-defendant's interests, the court must determine whether that party preserved the issue of standing. *See, e.g., Tinker v. Kent Gypsum Supply, Inc.*, 95 Wash.App. 761, 977 P.2d 627.

We turn now to an examination of Indiana law, specifically with an eye toward which of the two approaches is more compatible with that taken by our courts in similar circumstances. The language employed by Indiana courts in reciting the relevant boilerplate law differs somewhat from that of the aforementioned states with respect to a party's standing to challenge the dismissal of a co-defendant. The thrust of the analysis, however, is the same. It has been stated as follows:

> To have standing, a party must demonstrate a personal stake in the outcome of the lawsuit and must show, at a minimum, it was in immediate danger of sustaining some direct injury as a result of the conduct at issue. One defendant does not have standing to appeal a judgment rendered in favor of a co-defendant unless the defendant suffers some prejudice as a result of the entry of judgment in favor of the co-defendant.

*Shand Mining, Inc. v. Clay County Bd. of Comm'rs*, 671 N.E.2d at 479.

In *Bloemker v. Detroit Diesel Corp.*, 687 N.E.2d 358 (Ind.1997), the plaintiff-appellant filed a complaint against Detroit Diesel Corp, PTI Industries, Inc., and North

Manchester Foundry, Inc. (the Foundry), seeking damages for injuries allegedly caused by an exploding object owned or supplied by the defendants. Detroit Diesel and the Foundry submitted motions for summary judgment. At the summary judgment hearing, the trial court granted the plaintiff's motion to dismiss PTI with prejudice. Thereafter, the trial court entered summary judgment in favor of Detroit Diesel and the Foundry. Our supreme court subsequently overturned the grants of summary judgment. On cross-appeal, Detroit Diesel and the Foundry contended that the dismissal of PTI should be reversed as well. In addressing this argument, the court cited the following language from an earlier opinion:

> In cases where motions at the conclusion of the plaintiff's evidence threaten to remove a party that a remaining defendant claims should remain a party or nonparty for purposes of allocation of fault, such remaining defendant may and should oppose the motion or request that any ruling be delayed until the remaining defendant has an opportunity to present his evidence. In such event, the nature and purpose of the Indiana Comparative Fault Act, together with the efficient administration of justice, would normally result in a trial court's refusal to prematurely dismiss and discharge such parties. In the present case, defendant Bowles did not object to the dismissals or otherwise assert any claim that [the other parties] should remain for purposes of allocation of fault. Because the statutory burden of proof is upon the defendant with respect to the nonparty defense, failure to timely present such an objection waives the defense as to the dismissed parties.

*Id.* at 360 (quoting *Bowles v. Tatom,* 546 N.E.2d 1188, 1190 (Ind.1989)).

The court reasoned that the rationale justifying application of the above-mentioned principles to dismissals at the conclusion of the plaintiff's case applied as well to defendants dismissed by summary judgment before trial. The court noted that in both situations there is the possibility that the remaining defendant will be denied the opportunity to assert a statutory nonparty defense. This prejudice, however, was not sufficient in and of itself to support a conclusion that Detroit Diesel's and the Foundry's potential nonparty defenses survived the dismissal of PTI. Rather, the court focused upon whether Detroit Diesel and the Foundry acted to preserve their right to assert a nonparty defense. The court concluded that Detroit Diesel and the Foundry preserved the issue, stating:

> Because the trial court granted the defendants' motions for summary judgment, it was not necessary to retain PTI as a nonparty and granting the motion to dismiss PTI effectively closed the case. However, now that summary judgment is being vacated and this cause remanded for reconsideration, the outright dismissal of PTI must also be reconsidered. *In view of the timely objections and requests to retain PTI as a nonparty, we find that Detroit Diesel and North Manchester have preserved their right to assert a nonparty defense as to PTI.* The trial court is authorized to permit the inclusion of PTI as a nonparty for purposes of the defendants' assertion of the nonparty defense.

*Bloemker v. Detroit Diesel Corp.,* 687 N.E.2d at 360 (emphasis supplied).

The court in *Bloemker* did not address the question of whether PTI's dismissal could be reversed, much less whether Detroit Diesel and the Foundry had standing to seek such a ruling upon appeal. The opinion is instructive, however, in that it established the principle that a defendant may not sit idly as its interests are subjected to possible prejudice when other co-defendants seek dismissal from the case, and then, at a later stage in the proceedings, seek to protect that interest after dismissal has occurred. In such cases, the court will examine the actions undertaken to protect its interest at the stage where

the co-defendant sought dismissal, in order to determine whether the issue was preserved. We observe that the actions to be scrutinized are those relating to the claim that the remaining defendant seeks to resurrect following dismissal of a co-defendant. Thus, for example, the court in *Bloemker* examined whether Detroit Diesel and the Foundry preserved the nonparty defense by virtue of actions they undertook in challenging PTI's dismissal from the case.

This principle was applied in a recent opinion issued by this court. In *Rausch v. Reinhold,* 716 N.E.2d 993, Reinhold sued Rausch for negligence. Rausch named Murray and Kewanee Farm Equipment (Kewanee) as nonparties. Reinhold amended his complaint, adding Murray and Allied (Kewanee's owner) as defendants. Murray and Allied submitted motions to dismiss, which the court granted. Reinhold then moved to strike Rausch's nonparty defense on grounds that Rausch had failed to object to the dismissal of Murray and Allied. We held that a co-defendant must do something to preserve a nonparty defense prior to the dismissal of a co-defendant, even where the dismissal is deemed appropriate by the remaining co-defendant. We affirmed the trial court's judgment after determining that the appellant waived the issue because it did not provide a record that permitted review of whether Rausch's actions at the hearing on the motions to dismiss were sufficient to preserve the issue.

■ We turn our attention now to the instant case. In Indiana, a defendant must demonstrate that it has a stake in the outcome and will potentially suffer prejudice as a result of a co-defendant's dismissal. Under the Act, the dismissal of a co-defendant from a case subjects remaining defendants to greater potential liability. We agree with the courts in *Hammond v. North American Asbestos Corp.,* 207 Ill. App.3d 556, 152 Ill.Dec. 425, 565 N.E.2d 1343, *Tinker v. Kent Gypsum Supply, Inc.,* 95 Wash.App. 761, 977 P.2d 627, and *Kol*

*ler v. Liberty Mut. Ins. Co.,* 190 Wis.2d 263, 526 N.W.2d 799 that this is sufficient prejudice to confer standing upon a co-defendant to appeal such a ruling.

■ As is the case with other kinds of errors, however, we conclude that the remaining co-defendant must do something at the trial court level to preserve the error. We find the rationale and holding in *Tinker v. Kent Gypsum Supply, Inc.,* 95 Wash.App. 761, 977 P.2d 627 persuasive in this regard. Moreover, we conclude that this principle is consistent with the holdings in *Bloemker v. Detroit Diesel Corp.,* 687 N.E.2d 358 and *Rausch v. Reinhold,* 716 N.E.2d 993. We are aware that the latter cases were addressed to the viability of the nonparty defense following dismissal of a co-defendant. Nevertheless, both cases reflect the principle that a defendant must articulate to the trial court any claim it would later assert upon appeal concerning the prejudicial effect of the dismissal of one of its co-defendants. The failure to do so waives the claim for purposes of appeal. *See Rausch v. Reinhold,* 716 N.E.2d at 1001 ("[a]n appellant may not raise an issue on appeal that was not first presented to the trial court").

A review of the record reveals that U–Haul opposed the Valve Defendants' motions for summary judgment in the trial court by filing a brief in opposition to the motion and by filing a motion to correct error following the ruling. We conclude that U–Haul has standing to appeal summary judgment in favor of the valve defendants because it was thereby subjected to greater potential liability. Moreover, because it opposed the summary judgment motions filed by the Valve Defendants, U–Haul preserved the issue for purposes of appeal.

2.

U–Haul contends that the trial court erred in rendering summary judgment in favor of the Valve Defendants.

The Products Liability Act (the "Act") governs actions brought by a consumer or user of a product against the product's manufacturer or seller for physical harm caused by the product, "regardless of the substantive legal theory or theories upon which the action is brought." Ind.Code Ann. § 34–20–1–1 (West 1999). Accordingly, the Act governs both the strict liability and negligence claims brought by the Estate. The Act imposes liability as follows:

[A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property....

IC § 34–20–2–1. Thus, in order to establish a prima facie case of strict liability under the Act, the Estate (and, for purposes of this appeal, U–Haul as well) were required to demonstrate that (1) the valve was defective and unreasonably dangerous, (2) said defective condition existed at time product left the Valve defendants' control, and (3) the defective condition was a proximate cause of the accident. IC § 33–1–1.5–1 et seq.; *Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155 (Ind.Ct.App. 1997), *trans. denied.* We note that proximate cause is also an essential element not only of a claim of strict liability, but also a claim sounding in negligence. *See Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702 (Ind.Ct.App.1999).

Nulls sought summary judgment upon the alternative contentions that the Estate did not designate evidence tending to prove that the valve in question was in defective condition, or that the defective condition, if any, was a proximate cause of the accident. In support of its motion for summary judgment, Nulls designated the following materials: (1) the Estate's third amended complaint for damages, (2) the answers filed by the three individual defendants that comprise the Valve Defendants, (3) the Estate's response to an interrogatory in which the Estate indicated that U–Haul possessed evidence of a defect in the brake valve, (4) U–Haul's responses to interrogatories stating that it did not believe that the brake valve was a contributing cause of the accident, and that it did not believe the valve was defective, (5) the report of James Casassa, an expert retained by the Estate, (6) the report of Orla L. Holcomb, Jr., another expert retained by the Estate, and (7) the affidavit of James Starkey. Kraft's motion for summary judgment incorporated by reference Null's motion, brief, and designated evidence. Hydraforce's summary judgment motion incorporated by reference Null's summary judgment materials, and also designated the affidavit of Richard J. Fontecchio, the vice-president of Hydraforce. We will summarize the contents of the designated evidence.

The third amended complaint alleged that the Estate's claim of damages was based, in part, upon an allegation that the valve was a defective product within the meaning of the Act. In their respective answers, the Valve Defendants denied both that the valve was defective and that it was a proximate cause of the accident. Hydraforce designated an answer to an interrogatory submitted to the Estate by Hydraforce in which the Estate was asked to identify evidence showing that the valve was defective and that it was a cause of the accident. The Estate responded that U–Haul had conducted a post-accident inspection of the truck's brake system and determined that the valve was defective. Hydraforce submitted interrogatories to U–Haul asking U–Haul to, in effect, identify the evidence to which the Estate's response alluded. U–Haul responded that it "[did] not believe that the [valve] caused or contributed to the incident alleged in Plaintiff's Complaint. It is U–Haul's belief that the towing vehicle had sufficient brake capacity to safely stop." *Record* at 238. The next interrogatory asked if U–

Haul contended that the accident was caused in whole or in part by the valve being in a defective, unreasonably dangerous, or harmful condition. U–Haul answered, "No." *Id.*

Hydraforce next designated portions of a report submitted by expert witness Casassa. Casassa stated that, although an O-ring in the valve was deformed, it was not defective and did not cause the valve to leak. We reproduce below the relevant portion of Casassa's report:

> No external brake fluid leaks were found which would explain the absence of fluid in the trailer master cylinder during either of the police examinations of the trailer. We saw no evidence of fluid leakage during either of our examinations of the trailer, even though Mr. Leonard had added fluid to the system following the collision. Mr. Leonard testified that there was no fluid in the reservoir at the beginning of his examination. He also testified that he observed fluid leaking at the backup return valve on the left front caliper after he filled the master cylinder and he supplied photographs, which he claimed supported this observation. No leak is discernible in the copies supplied to WTS and we still have seen no other evidence, [sic] which would substantiate his observation.
>
> At the time the caliper was removed and disassembled, there was fluid in the master cylinder reservoir. The area around and below the backup return valve was "dry". The rubber boot around the valve was dry on the inside. There was no evidence of fluid leakage on any other part of the caliper. When the backup return valve was removed from the caliper, the sealing O-ring was in place and residue of the thread locking compound was still on the threads of the valve and the bore in the caliper. We saw no evidence of previous fluid leakage around the threads or sealing surface. Although the brake system has been altered, it is our opinion that a

meaningful test to determine if the valve is defective is still possible if the proper protocol can be agreed upon for testing the backup return valve.

> Given the absence of fluid in the reservoir, the absence of any evidence of a leak in the brake system, and the rust on the rotors, it is most likely that the trailer brakes had not worked for some time prior to the collision. Based on the evidence available at this time it appears that the most likely explanation is that the master cylinder reservoir was not refilled when the brake system was last service on January 25, 1995. When the calipers were replaced, the procedure called for the filling the reservoir [sic], bleeding the air from the system, checking for leaks, and testing the system for proper operation (including a road test). As the latter activities could not be accomplished if there was no fluid in the system, this would indicate the procedures were not followed. One or two safety certification inspections should have occurred between the date of the brake repairs in January and the collision in June of 1995. Checking the fluid level is part of the inspection process and any drop in fluid level would have been reason to remove the trailer from service until the brake system was repaired. We have seen no evidence on any safety certification inspection that was performed in 1995.

*Record* at 92–93.

Nulls next designated the report of expert witness Holcomb. According to Nulls, Holcomb's report was significant because it did *not* reach a conclusion that the valve leaked and was a contributing factor in the accident. With regard to the valve in question, Holcomb's report contained the following conclusions:

> 1. The deposition of Michael Leonard indicates the valve leakage occurred when the trailer brake system was pressurized, ie [sic], when the vehicle was decelerating. Leakage did not occur when no braking action was present.

The Leakage reported by Mr. Leonard (2 to 3 drops per second) was under maximum pressure provided by the brake-away system. This rate would have been less under more normal retardations.

2. Visual examination of the valve assembly during the April 21 inspection indicated that the larger external O-ring was deformed in an unusual manor [sic]. Examination of the valve cavity in the caliper housing showed the recess for the valve body face seal to be unusual, and inconsistent with the depiction on the U–Haul drawing 23396–072 for that housing.

Discrepancies also exist within the U–Haul drawing of the brake caliper housing 23396–072 Rev. D. The above discrepancies probably did not cause leakage.

*Record* at 264–65.

Nulls also designated the affidavit of James Starkey. Starkey's affidavit described how the valve came to be installed on the trailer. According to Starkey, U–Haul asked Nulls to supply it with retrofit brake kits in 1993 or 1994. The brake kits contained the valve in question. The kit was manufactured by Hydraforce and was shipped directly to Nulls. When Nulls received the kits, it unpackaged each one, tested for leaks and defects and made sure the valve operated properly. According to Starkey's affidavit, the particular valve that is a subject of this litigation would have passed inspection and then been shipped to U–Haul.

In responding to the summary judgment motions filed by the Valve Defendants, U–Haul designated the following materials: (1) the affidavit of Salvatore Malguarnera, (2) certain portions of a deposition of Mark Leonard, and (3) an expert report filed by Gary W. Cooper. We will briefly summarize the content of those materials.

In a deposition, Leonard was asked for his conclusions following an investigation of the U–Haul's brake system. He responded:

The master cylinder was empty when I first arrived, led [sic] me to believe there was a leak in the system somewhere. By doing my routine inspection, I found the only place that it leaked that I found was at the valve in the left front caliper.

*Record* at 276.

U–Haul designated the affidavit of Malguarnera, which read, in relevant part as follows:

4. That he has inspected the brake assembly which is the subject of this litigation.

5. That during his examination of the brake assembly, he observed manufacturing and design defects. These defects caused leakage of brake fluid from the brake assembly.

6. That the defects he observed were present at the time of manufacture and design.

*Record* at 272. The affidavit of Cooper stated, in pertinent part, as follows:

5. That it is my expert opinion that the collision between the Crown Victoria operated by Francis Radwan and the U–Haul truck and auto transport trailer operated by Willie Felton at issue, would not have occurred had the auto transport trailer had operable trailer brakes.

6. That it is my expert opinion that the collision between the Crown Victoria operated by Francis Radwan and the U–Haul truck/auto transport unit operated by Willie Felton at issue, would not have occurred had the truck/auto transport trailer unit had operable trailer brakes (maximum unit drag factor of 0.57) assuming Mr. Felton was operating the U–Haul truck/auto transport trailer unit at a speed of between forty-five and sixty (45–60) miles per hour, which is well within the range of speed stated by all witnesses.

*Record* at 8–9.

We conclude that the materials designated by the Valve Defendants specifically

refuted the allegations that the valve was defective and was a cause of the accident. *See Schmidt v. American Trailer Court, Inc.,* 721 N.E.2d 1251 (Ind.Ct.App.1999), *trans. denied.* Therefore, the designated materials were sufficient to shift the burden to U–Haul to demonstrate the existence of a genuine issue of material fact with respect to the elements of defective condition and proximate cause. *See Long v. Methodist Hosp. of Indiana, Inc.,* 699 N.E.2d 1164 (Ind.Ct.App.1998) (the issue of proximate cause was before the court because of expert testimony establishing genuine issue of material fact on that matter), *trans. denied.*

The trial court did not explain the basis upon which it granted summary judgment in favor of the Valve Defendants. It is clear, however, from the court's comments at the hearing that it focused upon the question of proximate cause. The evidence contained in the materials designated by U–Haul in response to the summary judgment motions may be summarized as follows. Leonard testified in a deposition that the master cylinder was empty when he inspected it after the accident. Believing this to be indicative of a leak in the system, Leonard inspected it and "found the only place that it leaked ... was in the valve in the left front caliper." *Record* at 276. Malguarnera submitted an affidavit stating that his inspection revealed a defect in the brake assembly and that these defects caused leakage of brake fluid from the brake assembly. Cooper submitted an affidavit stating his opinion that the accident "would not have occurred had the auto transport trailer unit had operable trailer brakes." *Id.* at 8.

Casassa's report stated that his inspection revealed no evidence of fluid leaking from the brake system. Further, Casassa reviewed photographs that, according to Leonard, supported Leonard's view that the valve leaked. Casassa indicated that "no leak [was] discernible in the copies supplied to [Casassa]", *Record* at 92, and that he "still had seen no other evidence

which would substantiate [Leonard's] observation." *Id.* Casassa's inspection, which he described in significantly greater detail than that of any of the other experts, led him to conclude that the system lacked fluid because someone had failed to fill the master cylinder when it was last serviced. Holcomb reported that his visual examination revealed deformities in the valve, but he concluded that the "discrepancies probably did not cause leakage." *Id.* at 265.

The aforementioned materials reflect that there remains a question of fact with respect to whether the valve was defective. Although Casassa opined that the valve was not defective, all of the other experts seemed to agree that the valve was defective in some respect. As stated previously, however, the trial court's grant of summary judgment appears to have been based upon U–Haul's failure to demonstrate that there is an issue of material fact with respect to whether the allegedly defective valve was a proximate cause of the accident. Casassa expressed his opinion that it was not a proximate cause of the accident. Holcomb concluded that deformities that he observed in the valve did not cause leakage. Leonard stated that he performed a test on the system in which the valve leaked when under maximum pressure. Malguarnera cited Leonard's valve inspection and test and concluded that the defects Leonard allegedly observed were present at the time of manufacture and design. Cooper did not discuss the nature of defect in the trailer's brake system, if any, or even whether there was a defect at all. Rather, he merely stated his conclusion that the collision would not have occurred if the trailer had operable brakes.

These materials reflect that none of the four experts testified both that the brake valve leaked as the result of a defect and that the leak was a proximate cause of the accident. The experts qualified to offer an opinion on the question of whether the valve leaked as the result of a defect

offered opposing opinions on that question. The only expert who offered an opinion even arguably supporting U–Haul's claim of proximate cause merely stated generally that the collision would not have occurred if the trailer's brakes were operable. He did not, however, state that the brakes were rendered inoperable as a result of a leak caused by a defect in the valve. Indeed, that expert, Cooper, was not qualified to render an expert opinion at all with respect to whether the valve was defective and leaked as a result thereof. We conclude that this was not sufficient to present a question of fact with respect to this element.

■■■■ The brake system on the trailer was comprised of many mechanical components. Although most people are undoubtedly aware that the purpose of a vehicle's brake system is to stop the vehicle's motion, the manner in which the separate components operate within that system is beyond their knowledge or understanding. When liability is premised upon an allegation that a specific component of the brakes failed and caused the brakes to malfunction, expert testimony on that subject is necessary. In such a case, for summary judgment purposes, a defendant may shift the burden to the plaintiff by designating expert evidence negating one of the elements the plaintiff must prove in order to prevail in the action. The Valve Defendants did that by designating Casassa's report. The burden then shifted to the Estate, or U–Haul, to designate evidence sufficient to place the matter in dispute.[3] None of the materials designated by the Estate or U–Haul specifically contradicted Casassa's assertion the valve in question did not cause the accident.

In summary, the Valve Defendants designated materials that specifically refuted the Estate's (and thus U–Haul's) allegation that the valve was defective, that the valve leaked as a result of the defect, and that the leaky valve was a proximate cause of the accident. The evidence designated in response by U–Haul was sufficient to present a question of fact with respect to whether the valve was defective, and with respect to whether the defect caused the valve to leak. U–Haul failed, however, to designate evidence specifically refuting Casassa's expert opinion that a leak in the valve was not a proximate cause of the accident. Therefore, U–Haul failed to demonstrate a material issue of fact on the question of proximate cause. *See Long v. Methodist Hosp. of Indiana, Inc.,* 699 N.E.2d 1164. The trial did not err in granting summary judgment in favor of the Valve Defendants.

Judgment affirmed.

MATHIAS, J., and NAJAM, J., concur.

---

3. We are mindful that causation in a negligence case need not always be proven by expert testimony. *See Smith v. Beaty,* 639 N.E.2d 1029 (Ind.Ct.App.1994). Rather, it may be proven by circumstantial evidence if that evidence is of sufficient probative force to constitute a basis for a legal inference and not mere speculation. *Id.* If causation is within a lay person's understanding, expert testimony is not necessary. *Id.* As explained elsewhere in this opinion, the matters in question were such that an expert's opinion was necessary.